**Thomas Tyrone GREEN, Petitioner,**

v.

**John E. KENT, Sheriff, Respondent.**

**Civ. A. No. 73–C–46–H.**

United States District Court,
W. D. Virginia,
Harrisonburg Division.

Jan. 7, 1974.

Harrison May, Commonwealth's Atty., Augusta Co., Staunton, Va., for respondent.

## OPINION and JUDGMENT

DALTON, District Judge.

This is a civil action brought pursuant to the provisions of 42 U.S.C. § 1983 by plaintiff Thomas Tyrone Green. Green alleges that while confined in the Augusta County Jail awaiting a hearing on a charge of breaking and entering, and while in the custody of the defendant Sheriff Kent, he was subjected to "inhuman, barbaric, savage and unjust treatment," for which he seeks monetary compensation.

As alleged by Green, his complaint grows out of the following circumstances:

On Friday, September 28, 1973, a commode was broken in the cellblock in which Green and four other inmates were housed. Thereafter, Sheriff Kent ordered all five inmates to their cells,

and called each one out individually for questioning. According to Green the sheriff, being unable to ascertain who had caused the destruction of the commode, ordered his deputies to remove all bedding, books, and shoes from each cell, and at 6:30 p. m. Friday ordered the deputies to confine the inmates to their cells until further notice from him. Green alleges that around 8:00 a. m. on Saturday, September 29, the commode in his cell became stopped up and began to run over, putting "human waste and urine and other wasted matter" on the floor of his cell. Green says that he brought the matter to the attention of a jailer, who refused to have the cell cleaned up, saying that the sheriff had ordered that nothing be put in, or taken out of the cell. Plaintiff asserts that at noon and at 5:00 p. m. Saturday, and again at 6:30 a. m. Sunday, his meals were served on plates that were passed under his cell door, through the matter on the floor. Green says that at 2:15 p. m. on Saturday the jailer and trustees unstopped the commodes, but left the floor as it was and cut off the water to the commodes. Green quotes the jailer as having stated to the inmates that "[t]hey look real good in a cell like that" and "[e]veryone of you are being treated just like you deserve." At 11:00 a. m. on Sunday, September 30, Green and the others were "released" from what he terms "non-punishment confinement." Green also complains that he was denied toilet paper and toilet facilities other than the stopped up commode in his cell during this period.

Sheriff Kent, a deputy sheriff, a jailer, and a trustee at the jail have all filed affidavits based upon their personal knowledge that paint a somewhat different picture than plaintiff. Sheriff Kent states that he was called to the county jail on the evening of Friday, September 28, 1973, and found hundreds of pieces of broken vitreous type material that a commode is made of in the cellblock in which Green was confined. All the inmates save for Green, who implicated the others, denied any knowledge of what had happened. Sheriff Kent wanted to move plaintiff to another cellblock since he had volunteered information about his then cell mates, but the sheriff says that Green insisted on returning to his own cell. Kent, who was off duty at the time he was called to the jail, left for the week-end after instructing the jailers not to clean up the broken procelain until they had taken pictures of the damage.[1] Sheriff Kent says that he called the jail on Sunday morning to see if there had been any further incidents, and upon learning that the Friday evening damage had yet to be cleaned up, ordered that it be done. He also ordered that whatever belongings of the five inmates had been taken be returned. Sheriff Kent, and all of the county employees associated with the jail who filed affidavits, state that they have no knowledge of any human waste being on the cellblock floor. The sheriff does recall that there was water from the broken commode on the floor of most of Green's cellblock when he left it Friday night. One of the jail trustees has stated that his water was mopped up that night, and that certain items in the inmates' cells which had become wet were removed from the cells. The sheriff says that it is an almost daily occurrence in the jail for the inmates to use something to clog the commodes, and frequently the jailers have to turn the water off to prevent flooding.

Taking plaintiff's allegations at their worst, the court is presented with allegations concededly amounting to disgusting, uncalled for, and not to be condoned actions on the part of the jail officials. Nevertheless, this court is of the opinion that Green did not suffer such a violation of his constitutional rights sufficient to sustain an action under the Civil Rights Act. To be sure, there very well may be presented situa-

---

1. Sheriff Kent says that the pictures were to be taken for the benefit of the Augusta County Board of Supervisors, which was concerned because almost one-third of the county jail had been rendered unusable because of recent acts of inmate vandalism.

tions wherein the conduct of prison officials is such that "shocks the conscience," Rochin v. California, 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183 (1952), such as to be violative of the Constitution. Cf., Johnson v. Glick, 481 F.2d 1028 (2nd Cir. 1973), in which a prisoner was allegedly beaten by a guard, then denied medical attention for several hours; Hirons v. Director, Patuxent Institution, 351 F.2d 613 (4th Cir. 1965), in which a prisoner alleged that he was being denied a necessary operation, endangering his physical well-being; and Landman v. Royster, 333 F.Supp. 621 (E.D.Va.1971), which condemned a prison diet limited to bread and water, chaining of inmates within their cells, taking inmates' clothing while they were in solitary and keeping them in unheated cells with open windows in the winter, and the crowding of several men for extended periods of time into a single "solitary" cell.

Cases alleging conditions similar to those set forth by plaintiff in which relief has been granted have generally stemmed from violations of an extended, on-going nature, and usually involve some form of punitive incarceration, such as solitary confinement. See, e. g., Wright v. McMann, 387 F.2d 519 (2nd Cir. 1967), in which the petitioner claimed to have been subjected to a thirty-three day stay in solitary confinement in a "strip" cell, devoid of all furniture except a sink and toilet, which were allegedly incrusted with "slime, dirt and human excremental residue," and that for some eleven days he was forced to sleep nude on the cold rough concrete floor of the cell even though the windows of the cell were kept open during sub-freezing temperatures. In addition, the prisoner contended that he was denied any hygenic implements such as soap and toilet paper, and that his food was served in bowls which were placed upon the floor. In Holt v. Sarver, 300 F.Supp. 825 (E.D.Ark.1969), aff'd and remanded, 442 F.2d 304 (8th Cir. 1971), the normal practice was to confine for extended periods of time four or more men in single "isolation" cells, which the court found to be extremely dirty and unsanitary, and pervaded by bad odors from the toilets. In Jordan v. Fitzharris, 257 F.Supp. 674 (N.D.Cal.1966), it was concluded that a prisoner had been subjected to cruel and unusual punishment during twelve days of isolation confinement within a six-by-eight foot "strip cell," which was unlighted, inadequately heated and ventilated, and devoid of all furnishings except a concrete platform containing a hole to receive bodily wastes, which was flushed at the whim of the correctional officers. It was found that the cell was never cleaned during the prisoner's confinement, although it was so covered with the bodily waste of previous inhabitants as to cause the prisoner to vomit. The prisoner was not furnished with hygenic implements, and was forced to remain in the cell naked and sleep upon its cold concrete floor with nothing but a stiff canvas mat to serve as a blanket.

The plaintiff in the instant case suffered no such severe deprivation. Sheriff Kent states that he offered to put Green in another cellblock because he had volunteered information as to who had shattered the commode, and it was at Green's own insistence that he was put back in his own cell. Green says his mattress was taken away; this is denied by the jail trustee and the deputy sheriff. The deputy sheriff does say that some of the inmates' property was taken from their cells because it had been thrown on the floor and become soaked during the incident Friday evening. Green was served his regular meals, in what the guards say was the normal manner. The commode in Green's cell worked properly until it became stopped up on the morning of September 29; it was promptly unstopped, even though the guards felt it necessary to turn off the water to prevent it from happening again. At most, the subsequent conditions of which Green complains lasted no longer that some twenty-seven hours. Green was allowed to keep his clothing, and, even if he was deprived of a mat-

tress, he had a raised slab upon which to sit and sleep. Plaintiff does not allege that he suffered any injury to his health, other than the "mental torture" of which he complains.

In concluding that plaintiff has failed to state a claim suitable for monetary relief under 42 U.S.C. § 1983, this court finds support in the decision in Roberts v. Pepersack, 256 F.Supp. 415 (D.C.Md. 1966), cert. denied, 389 U.S. 877, 88 S. Ct. 175, 19 L.Ed.2d 165 (1966). In that case, in which relief was denied, it was charged by a prisoner who was disciplined for instigating a sit-down demonstration that, among other things, he was denuded and forced to lie on a cold concrete floor without a mattress or blankets during twenty-seven hours of solitary confinement while the temperature was about forty degrees, and that he was denied baths and other toiletry privileges during sixteen days of ensuing semi-segregation confinement.

Insofar as plaintiff may have been confined to his cell for reasons of punishment for almost forty hours after the commode-destruction incident, as Green contends was ordered by Sheriff Kent, it cannot be classified so cruel or inhuman as to bring it within the prohibitions of the Eighth and Fourteenth Amendments. Sheriff Kent avows that confining petitioner to his cell was done to maintain control in the jail, and to prevent further destruction of jail property. In Roberts v. Pegelow, 313 F.2d 548, 550 (4th Cir. 1963), the Fourth Circuit stated:

> So long as the punishment imposed for an infraction of the rules is not so unreasonable as to be characterized as vindictive, cruel or inhuman, there is no right of judicial review of it.

In this instance, the court believes that to whatever extent punishment was involved, if at all, it is not subject to judicial review.

There is an additional problem with Green's complaint, which the court will but take note of in view of the resolution of the case above. The occurrence of the "wasted matter" overflowing onto the floor of Green's cell, which is the crux of his complaint, did not take place until Saturday, September 29. When Sheriff Kent went off duty on Friday evening, no such condition existed. Kent left instructions with the guards to clean up the "mess" created by the broken porcelain after pictures had been taken. Some of the water apparently was mopped up. All indications are that the Saturday morning overflow was the result of actions taken by plaintiff or one of the other four inmates in his cellblock. Sheriff Kent states in his affidavit that when he returned from an out-of-town visit on the morning of Sunday, September 30, he called the jail to see if there had been any more problems, and upon being informed that the broken porcelain in plaintiff's cellblock had not yet been cleaned up, ordered that it be done, and that anything that had been taken from the inmates be returned. This action apparently put an end to the conditions of which Green complains. Plaintiff has not alleged that Kent knew of the alleged "wasted matter" on the floor of his cell, and has not alleged any overt act or wrongful conduct on the part of any of the jailers or trustees that was specifically authorized by Sheriff Kent as a result of such knowledge, or that there had been a pattern of previous behavior sanctioned by the Sheriff. By Green's own allegations, every indication is that the jailer and trustees were his tormentors and castigators, not the sheriff. It has been held that where monetary damages, as distinguished from equitable relief, is sought under the provisions of the Civil Rights Act, the doctrine of *respondeat superior* does not apply, and the personal involvement of the defendant is required. Adams v. Pate, 445 F.2d 105 (7th Cir. 1971). *See also* Johnson v. Glick, *supra*, at 1033–1034; Jennings v. Davis, 476 F.2d 1271 (8th Cir. 1973). This rule is not unanimously accepted, however. *See, e. g.*, Williams v. United States, 353 F.Supp. 1226 (E.D.La.1973).

For the above reasons, defendant's motion to dismiss plaintiff's complaint

is granted, and the same is hereby ordered.

The clerk is directed to send a certified copy of this opinion and judgment to petitioner and counsel for respondent.