Ann STEWART, Plaintiff,

v.

CITY OF WICHITA, KANSAS,
Defendant.

No. 92–1534–PFK.

United States District Court,
D. Kansas.

July 15, 1993.

Jim Lawing, Wichita, KS, for plaintiff.

Gary E. Rebenstorf, City Atty., Kelly J. Rundell, Asst. City Atty., Wichita, KS, for defendant.

## MEMORANDUM AND ORDER

PATRICK F. KELLY, Chief Judge.

Along with dozens of other men and women, Ann Stewart was arrested on August 17, 1991, while protesting outside an abortion clinic in conjunction with Operation Rescue's "Summer of Mercy" campaign in Wichita, Kansas. After her arrest, Stewart was carried to a bus in which she and 38 of her fellow arrestees were taken to the Wichita Police Department Law Enforcement Training Center, arriving there about noon. The police had arranged for the arrestees to be taken to the center because of the high volume of persons being arrested in connection with Operation Rescue's activities. There were 13 to 15 police officers at the center.

When she arrived at the training center, Stewart asked an unidentified police officer for permission to go to the bathroom. Stewart alleges that this officer denied her permission to do so, and that she was told to go to the center's courtyard where the arrestees were to be held during processing. Two more buses subsequently arrived, bringing the number of arrestees in the courtyard to between 76 and 80.

Stewart began to experience pain from her need to relieve herself. After waiting for 15 or 20 minutes, Stewart again asked to be taken to a bathroom, and was again refused. While she waited in the courtyard, Stewart discovered a green bucket. Screened by some evergreens and hidden behind several other arrestees, who stood with their back to Stewart and sang so as to drown out any embarrassing sounds, Stewart went to the bathroom in the green bucket. No one saw her.

The police began processing the arrestees about an hour after their first arrival at the center. Stewart has not suffered any medical problems as a result of her experience.

Stewart has filed the present civil rights action against the City of Wichita. The City has moved for summary judgment. On June 7, 1993, the court held a hearing on the City's motion. The court deferred any ruling on that motion, as Stewart only tendered her response to the motion immediately before the hearing, and the court wished to allow the City time to reply. For the reasons stated herein, the City's motion is hereby granted.

Summary judgment is proper where the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). In considering a motion for summary judgment, the court must examine all evidence in a light most favorable to the opposing party. *McKenzie v. Mercy Hospital*, 854 F.2d 365, 367 (10th Cir.1988). The party moving for summary judgment must demonstrate its entitlement to summary judgment beyond a reasonable doubt. *Ellis v. El Paso Natural Gas Co.*, 754 F.2d 884, 885 (10th Cir.1985). The moving party need not disprove plaintiff's claim; it need only establish that the factual allegations have no legal significance. *Dayton Hudson Corp. v. Macerich Real Estate Co.*, 812 F.2d 1319, 1323 (10th Cir.1987).

In resisting a motion for summary judgment, the opposing party may not rely upon mere allegations or denials contained in its pleadings or briefs. Rather, the nonmoving party must come forward with specific facts showing the presence of a genuine issue of material fact for trial and significant probative evidence supporting the allegation. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986). Once the moving party has carried its burden under Rule 56(c), the party opposing summary judgment must do more than simply show there is some metaphysical doubt as to the material facts. "In the language of the Rule, the nonmoving party must come forward with 'specific facts showing that there is a *genuine issue for trial.*'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (quoting Fed.R.Civ.P. 56(e)) (emphasis in *Matsushi-*

*ta*). One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses, and the rule should be interpreted in a way that allows it to accomplish this purpose. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The court finds that there is no basis for finding a constitutional violation of plaintiff Stewart's rights. Under *Bell v. Wolfish*, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979), the constitutional rights of a pretrial detainee are violated by actions by law enforcement officials if (1) the actions represented punishment of the detainee, (2) were unrelated to a legitimate government purpose, and (3) were not insignificant in nature.

The uncontroverted facts establish that Stewart's experience did not represent a constitutional violation. First, the actions of the police do not represent punishment. There is no evidence of an intent on the part of any person to punish Stewart. Rather, the uncontradicted evidence establishes that the officers at the center were overwhelmed by the sudden influx of a large number of uncooperative arrestees. Many of the arrestees refused to cooperate when they were arrested and adopted the tactic of taking "baby steps" in order to frustrate the officers and drag out the arrest process. Stewart went limp and had to be carried to the waiting bus.

The evidence also indicates that there was a small number of officers at the center, and that the officers did not permit individual arrestees to go to the bathroom because to do so would have required decreasing the number of available officers so that escorts could be provided for the persons going to the bathroom.

There is no question that Stewart suffered some decrease in her ability to respond to the call of nature in the privacy which she might otherwise enjoy. But, as the Supreme Court noted in *Wolfish*, a loss of privacy is an inherent consequence of arrest and confinement. 441 U.S. at 537, 99 S.Ct. at 1873. In the present case, while there is no evidence suggesting any punitive motivation by the police, there is a substantial amount of evidence indicating that the decision to limit access to rest room facilities was a reasonable decision under the circumstances, one based upon the legitimate governmental purpose of safely and securely processing persons under arrest.

Moreover, the court finds that the deprivation suffered by Stewart in the present case cannot be characterized as significant in a constitutional sense. In *Green v. Kent*, 369 F.Supp. 1124 (W.D.Va.1974), the plaintiff was confined barefoot in his cell for 27 hours, while an overflowing commode sent waste onto the floor of the cell, and during which time the plaintiff was prevented from using other bathroom facilities and refused toilet paper. The court found that these circumstances were certainly "disgusting, uncalled for, and not to be condoned." 369 F.Supp. at 1125. The court however found that the plaintiff had failed to demonstrate a constitutional violation, noting that there was no allegation that the plaintiff had suffered any injury as a result of his experience. *Id.* at 1127. *See also Citro v. Zeek*, 544 F.Supp. 829 (W.D.N.Y.1982) (no constitutional deprivation in denying plaintiff prisoner an adequate supply of toilet paper).

The two cases relied upon by Stewart are markedly dissimilar to the present case. In both *Poindexter v. Woodson*, 510 F.2d 464 (10th Cir.), *cert. denied*, 423 U.S. 846, 96 S.Ct. 85, 46 L.Ed.2d 68 (1975), and *Strachan v. Ashe*, 548 F.Supp. 1193 (D.Mass.1982), prisoners were kept for very long periods of time in extremely small, barren cells with inadequate bathroom facilities. In *Poindexter*, following a riot in the prison, inmates were held naked for up to 16 days in barren 9' by 5' "strip cells." The inmates were not allowed bathroom facilities, nor did the cells have drains, windows, or bunks. In *Strachan*, the plaintiff was kept in a 10' by 10' hospital isolation cell for 50 days. In addition to the lack of a toilet, the cell had no running water, was inadequately heated, and was entirely barren except for a mattress placed on the floor.

Finally, even if plaintiff Stewart had shown a constitutional deprivation in having to use the green bucket, the defendant City is still entitled to summary judgment. Stew-

art has not sued the unnamed officer who refused to allow her to use the restroom. Instead she has sued the City of Wichita. The City can be liable only if it can be established that it has a policy, pattern or practice of prohibiting arrestees from using the rest room. *See City of Oklahoma City v. Tuttle,* 471 U.S. 808, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985).

In the present case, there is no evidence of such a policy. Rather, the evidence indicates that this was simply a one-time incident. The only allegation cited by Stewart in her complaint is that the City is responsible because of the "chain of command" in the police department. But if the mere presence of a chain of command in a police department is sufficient to create liability on the part of a city for any and all acts of the individual officers it employs, the resulting liability would be indistinguishable from *respondeat superior,* which, of course, the Supreme Court has repudiated in cases such as *Monell v. New York City Dept. of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

Police officers do not operate efficiently and effectively as independent contractors—a chain of command structure is an indispensable element of the modern police force. In bringing a claim for a constitutional deprivation against the municipal employer of an individual officer, a plaintiff must demonstrate some failing on the part of the employer, something more than a generalized claim of "chain of command."

In the light of the court's rulings, the court finds that it is unnecessary to address the issues raised in the plaintiff's request for additional discovery.

IT IS ACCORDINGLY ORDERED this 15 day of July, 1993, that the defendant's motion for summary judgment (Dkt. No. 6) is hereby granted.