959 F.Supp. 1253 (1997)
Alvin C. DENNIS, Plaintiff,
v.
Warden Otis THURMAN; Associate Wardens R. Morris; L. Hood, M. Yarborough; Correctional Captain G. Mellot; Program Administrator A.H. Amero; California Correctional Peace Officers Ltd. D.K. Downs; Sgts E. Buelna, J. Austin, J. Selle, Officers G. Hernandez, D. Gaunt, E. Serrano, R. Leyvas, K. Large; R. Martinez; A. Sylva; P. Tome, D. Turner, R. Henderson, D. Meeker, R. Judkins, L. Craig, J. Maloy, D. Franklin, P. Smith, H. Huerta, R. Mira, R.C. Stivas, J. Cox, M. Webb, E. Rubbio, R. Lopez, California Department of Corrections Physicians Doctors, Dr. Johnson; B. Shima; J. DeCastro, Defendants.
No. CV 94-5337-CBM(RC).
United States District Court, C.D. California.
March 12, 1997.
*1254 *1255 *1256 Alvin C. Dennis, pro se.
Anthony Da Silva California Office of the Attorney General, San Diego, CA, for Defendants.

ORDER ADOPTING REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
CONSUELO BLAND MARSHALL, District Judge.
Pursuant to 28 U.S.C. Section 636, the Court has reviewed the Complaint and other *1257 papers along with the attached Report and Recommendation of United States Magistrate Judge Rosalyn M. Chapman, and has made a de novo determination.
IT IS ORDERED that (1) the Report and Recommendation is approved and adopted; (2) summary judgment is granted for defendants on all of plaintiff's federal claims, and Judgment shall be entered accordingly; and (3) this Court declines to exercise jurisdiction over the pendent state law claims, and they are accordingly dismissed without prejudice.
IT IS FURTHER ORDERED that the Clerk shall serve copies of this Order, the Magistrate Judge's Report and Recommendation and Judgment by the United States mail on the parties.

REPORT AND RECOMMENDATION OF A UNITED STATES MAGISTRATE JUDGE
CHAPMAN, United State Magistrate Judge.
This Report and Recommendation is submitted to the Honorable Consuelo B. Marshall, United States District Judge, pursuant to the provisions of 28 U.S.C. § 636 and General Order 194 of the United States District Court for the Central District of California.

BACKGROUND

I
On August 5, 1994, plaintiff Alvin C. Dennis, a state prisoner proceeding pro se and in forma pauperis, filed his original complaint. On July 14, 1995, he filed an unverified Second Amended Complaint ("SAC") under 42 U.S.C. §§ 1981, 1983 and 1985(3) against thirty-six prison officials, correctional officers and physicians at California State Prison-Los Angeles County in Lancaster, California ("prison"). The plaintiff's claims stem from events on February 2, 1994, when plaintiff was forcibly extracted from his prison cell, and the subsequent medical treatment he received for injuries suffered during the cell extraction. The plaintiff specifically claims his rights under the Fourth,[1] Eighth and Fourteenth Amendments, as well as under 42 U.S.C. § 1981, 1983 and 1985(3), were violated when he was deprived of water for 36 hours, when force was used to extract him from his cell, and when he received inadequate and untimely medical care for the injuries he suffered during the cell extraction. (SAC, ¶¶ 30-32). The plaintiff further brings state law claims for battery, negligence, and violation of the California Unruh Civil Rights Act (Cal. Civ. Code §§ 51 and 52). The plaintiff seeks compensatory damages of $100,000.00 from each defendant and punitive damages in an undetermined amount.
Defendants Morris, Amero, Downs, Buelna, and Austin filed an answer to the initial complaint on November 30, 1994. Defendants Hood, Yarborough, Serrano, Leyvas, Large, Sylva, Turner, Henderson, Meeker, Judkins, Craig, Maloy, Franklin, Smith, Huerta, Mira, Cox, Webb, Rubbio, Lopez, Shima and DeCastro filed an answer to the Second Amended Complaint on November 27, 1995.[2]
On June 25, 1996, answering defendants and defendant Selle (who did not answer) filed a motion for summary judgment.[3] The plaintiff was given notice of the requirements to respond to a motion for summary judgment *1258 under Fed.R.Civ.P. 56. Klingele v. Eikenberry, 849 F.2d 409, 411-12 (9th Cir. 1988). The plaintiff filed only his own affidavit in opposition to defendants' motion for summary judgment. The defendants did not file a reply.

II
The summary judgment documents show the following facts: On February 1, 1994, defendant Downs received information of a plan by inmates in the administrative segregation unit of the prison to stab a correctional officer with "weapons which were manufactured from the metal support frame of a stolen dust mop." (Defendants' Motion for Summary Judgment, Declaration of Darrell K. Downs ("Downs Decl."), ¶ 2); Declaration of Rufus Morris ("Morris Decl."), ¶ 2). A preliminary search of some inmates and their cells in the administrative segregation unit was conducted on February 1, 1994, and weapons were, in fact, discovered. (Id., Morris Decl., ¶ 2; Declaration of Sgt. Ernie Buelna ("Buelna Decl."), ¶ 2).
Defendant Morris became concerned that "inmates still possessed outstanding weapons," and, thus, received approval from the Chief Deputy Warden for a search of all cells in the administrative segregation unit of the prison, including plaintiff's cell. (Id., Morris Decl., ¶ 3). That search was to be conducted the next day, on February 2, 1994. (Id., Morris Decl., ¶ 4; Downs Decl., ¶ 3). Cell extraction teams were formed to facilitate a "thorough and timely search" of the unit. Id., Morris Decl., ¶ 3; Buelna Decl., ¶ 4). As further preparation for the cell extractions, the water supply was turned off to inmates' cells to "prevent inmates from flooding their cells." (Id., Downs Decl., ¶ 5). Inmates were provided with liquids with every meal during the 36 hour period the water was turned off. (Id.).
Every inmate was given several opportunities to voluntarily exit his cell. (Id., Downs Decl., ¶ 3). Defendant Downs went to each cell prior to the extraction and gave several verbal warnings ordering the inmates to peacefully exit their cells and to allow the staff to search for weapons. (Id.). "Many inmates expressed defiance to the staff's request to peacefully exit their cells and refused to allow the staff to search their persons or cells." (Id., Downs Decl., ¶ 4). These inmates "barricaded themselves with state-issued mattresses, clothing, and books." (Id.).
The plaintiff refused several orders from defendant Downs to voluntarily be placed in handcuffs and to permit a search of his person and cell and "blockaded himself in the cell behind a mattress." (Id., Downs Decl., ¶ 7; Buelna Decl., ¶ 5). When plaintiff's cell door was opened, plaintiff began to move around in his cell. (Id., Buelna Decl., ¶ 5). Defendant Buelna had a 37 mm gas gun, which he fired after plaintiff's cell door was open "at the floor in order to ricochet the bullets"; he did not shoot directly at plaintiff. (Id., Buelna Decl., ¶ 5). Members of the cell extraction team then entered plaintiff's cell and restrained him. (Id., Downs Decl., ¶ 7).
Shortly after the plaintiff was removed from his cell, he was examined by medical personnel. (Id., Downs Decl., ¶¶ 6, 7; Buelna Decl., ¶ 5). The plaintiff suffered a gunshot wound to his left leg, which fractured the leg. (Id., Declaration of B. Shima, M.D. ("Shima Decl."), ¶ 2; Exhs. 4, 5). He was treated at the Antelope Valley Hospital Medical Center. (Id.) The plaintiff's injury to his leg subsequently was treated again on March 22, May 3, June 22, September 7 and October 19, 1994. (Shima Decl., ¶ 3.) The x-rays taken on October 19, 1994, showed that the fracture was healing, there was stable alignment, and no pain was elicited for plaintiff. (Id., ¶ 4).
Following the cell extraction, plaintiff was charged with violation of Title 15, California Code of Regulations, Section 3005(c), for participating in a mass disturbance in the administrative segregation unit. (Id., Downs Decl., ¶ 8; Exh. 2, Rules Violation Report). The plaintiff was charged as follows:
On Wednesday, 02-02-94 ... officers approached your cell instructing you to exit [and] you refused to comply with the order. Based upon your refusal, it was necessary to extract you from the cell.... Your active participation in this disturbance *1259 jeopardized the safety and security of the institution.
(Id., Exh. 2, Rules Violation Report). At a hearing on the charge, the plaintiff was found "guilty," and assessed 90 days loss of credit for a Division "D" offense. (Id.; Downs Decl., ¶ 8).

DISCUSSION

III
Fed.R.Civ.P. 56(c) authorizes the granting of summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The standard for granting a motion for summary judgment is essentially the same as for granting a directed verdict. Judgment must be entered "if, under the governing law, there can be but one reasonable conclusion as to the verdict.... If reasonable minds could differ ..." judgment should not be entered in favor of the moving party. Anderson v. Liberty Lobby. Inc., 477 U.S. 242, 250-51, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).
The moving party bears the initial burden of identifying the elements of the claim in the pleadings, or other evidence, which the moving party "believes demonstrates the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); Adickes v. S.H. Kress and Co., 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); Zoslaw v. MCA Distrib. Corp., 693 F.2d 870, 883 (9th Cir. 1982), cert. denied, 460 U.S. 1085, 103 S.Ct. 1777, 76 L.Ed.2d 349 (1983). "A material issue of fact is one that affects the outcome of the litigation and requires a trial to resolve the parties' differing versions of the truth." S.E.C. v. Seaboard Corp., 677 F.2d 1301, 1305-06 (9th Cir.1982). The burden then shifts to the non-moving party to establish, beyond the pleadings, that there is a genuine issue for trial. Celotex, 477 U.S. at 324, 106 S.Ct. at 2553. More than a "metaphysical doubt" is required to establish a genuine issue of material fact. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Finally, the parties bear the same substantive burden of proof as would apply at a trial on the merits, including plaintiff's burden to establish any element essential to his case. Liberty Lobby, 477 U.S. at 252, 106 S.Ct. at 2512; Celotex, 477 U.S. at 322, 106 S.Ct. at 2552; Taylor v. List, 880 F.2d 1040, 1045 (9th Cir.1989).

IV
The conditions of confinement in a prison are subject to scrutiny under Eighth Amendment standards. Hutto v. Finney, 437 U.S. 678, 685, 98 S.Ct. 2565, 2571, 57 L.Ed.2d 522 (1978); Hoptowit v. Spellman, 753 F.2d 779, 784 (9th Cir.1985). The "unnecessary and wanton infliction of pain" constitutes cruel and unusual punishment forbidden by the Eighth Amendment. Whitley v. Albers, 475 U.S. 312, 319, 106 S.Ct. 1078, 1084, 89 L.Ed.2d 251 (1986) (quoting Gregg v. Georgia, 428 U.S. 153, 173, 96 S.Ct. 2909, 2925, 49 L.Ed.2d 859 (1976)). To prove the use of excessive force in violation of the Eighth Amendment, an inmate must show the official applied force "maliciously and sadistically" for the purpose of inflicting pain, rather than in a "good faith effort to maintain or restore discipline." Hudson v. McMillian, 503 U.S. 1, 4-5, 7, 112 S.Ct. 995, 999, 117 L.Ed.2d 156 (1992) (quoting Whitley, 475 U.S. at 320-21, 106 S.Ct. at 1084); LeMaire v. Maass, 12 F.3d 1444, 1452-53 (9th Cir.1993).
Prison administrators must be accorded deference in the execution of practices that in their judgment are needed to preserve internal order and to maintain institutional security. Bell v. Wolfish, 441 U.S. 520, 547, 99 S.Ct. 1861, 1878, 60 L.Ed.2d 447 (1979). "Whether in the context of a prison-wide disturbance or an individual confrontation between an officer and a prisoner, corrections officers often must act immediately and emphatically to defuse a potentially explosive situation." Jordan v. Gardner, 986 F.2d 1521, 1528 (9th Cir.1993).
Such factors as the need for the application of force, the relationship between the need for the application of force and the *1260 amount of force used, and the extent of injury inflicted are relevant to the ultimate determination. Whitley v. Albers, 475 U.S. at 319, 106 S.Ct. at 1084. An inmate, however, does not need to have suffered an injury to establish an Eighth Amendment violation. Hudson v. McMillian, 503 U.S. at 7, 112 S.Ct. at 999.
Correctional officers may be required to use some measure of force if an inmate refuses a valid order. Whitley v. Albers, 475 U.S. at 320, 106 S.Ct. at 1084-85; LeMaire v. Maass, 12 F.3d at 1451; Michenfelder v. Sumner, 860 F.2d 328, 335 (9th Cir.1988). The appropriateness of the use of force must be determined by the facts and circumstances of each case. Id., 860 F.2d at 336.
In the context of a prison riot or other mass threat to prison security, dangerous force reasonably may be used to restore order to the prison. Whitley v. Albers, 475 U.S. at 323, 106 S.Ct. at 1086. In Whitley, an inmate was shot by a prison guard in the course of a prison riot. The Supreme Court stated that "the order to shoot, qualified as it was by an instruction to shoot low, falls short of commanding the infliction of pain in a wanton and unnecessary fashion." Id. The Supreme Court determined that the shooting was "part and parcel of a good-faith effort to restore prison security." Id. at 326, 106 S.Ct. at 1087. See also Williams v. Burton, 943 F.2d 1572, 1574 (11th Cir.1991) (prison officials were justified in placing inmate in four point restraints), cert. denied, 505 U.S. 1208, 112 S.Ct. 3002, 120 L.Ed.2d 877 (1992); Soto v. Dickey, 744 F.2d 1260, 1270 (7th Cir.1984) ("use of mace, tear gas or other chemical agents ... when reasonably necessary to prevent riots or escapes is not a violation of the Eighth Amendment"), cert. denied, 470 U.S. 1085, 105 S.Ct. 1846, 85 L.Ed.2d 144 (1985); Jones v. Mabry, 723 F.2d 590, 595 (8th Cir.1983) (escape attempt justified requiring inmates to wear leg irons for extended period of time), cert. denied, 467 U.S. 1228, 104 S.Ct. 2683, 81 L.Ed.2d 878 (1984); Poindexter v. Woodson, 510 F.2d 464, 466 (10th. Cir.) (water hoses and tear gas used on inmates where force necessary to control prison disruption), cert. denied, 423 U.S. 846, 96 S.Ct. 85, 46 L.Ed.2d 68 (1975).
Dangerous weapons or substances in a prison setting may be used where the prisoner, by resisting an order, has presented a serious threat to prison security or is physically threatening to prison officials, and such weapons or substances do not per se violate the Eighth Amendment. See, e.g., Michenfelder v. Sumner, 860 F.2d at 335-36 (taser was "used to enforce compliance with a search that had a reasonable security purpose, not as punishment"); Spain v. Procunier, 600 F.2d 189, 196 (9th Cir.1979) (tear gas is reasonably necessary prison technique if prisoner refuses to leave a cell); Jasper v. Thalacker, 999 F.2d 353, 354 (8th Cir.1993) (stun gun); Caldwell v. Moore, 968 F.2d 595, 601 (6th Cir.1992) ("It is not unreasonable for the jail officials to conclude that the use of a stun gun is less dangerous for all involved than a hand to hand confrontation."); Soto v. Dickey, 744 F.2d at 1269 (mace)
Here, prison officials were responding to a plan to kill a correctional officer and the discovery of hidden weapons, an extremely serious threat to internal security, and they had a legitimate penological need to perform cell extractions. If inmates refused to voluntarily leave their cells, some use of force, including use of the block gun, was necessary to remove them.[4] There is no evidence that any defendant used force in excess of that required to restrain plaintiff or that any defendant acted maliciously or sadistically for the purpose of causing plaintiff pain. In fact, the undisputed evidence shows that only defendants Downs and Buelna had an actual role in plaintiff's cell extraction; the other correctional officer defendants, Hood, Austin, Selle, Serrano, Leyvas, Large, Sylva, Turner, Henderson, Meeker, Judkins, Craig, Maloy, Franklin, Smith, Huerta, Mira, Cox, Webb, Rubbio, and Lopez played no *1261 role in plaintiff's cell extraction.[5] (Id., Declaration of R. Henderson, ¶ 3; Declaration of D. Turner, ¶ 3, Declaration of A. Sylva, ¶ 3; Declaration of J. Austin, ¶ 2; Declaration of E. Rubbio, ¶ 3; Declaration of D. Meeker, ¶ 3; Declaration of P.G. Smith, ¶ 3; Declaration of J.A. Cox, ¶ 5; Declaration of H. Huerta, ¶ 3; Declaration of K. Large, ¶ 3; Declaration of R. Lopez, ¶ 3; Declaration of V.J. Selle, ¶ 3; Declaration of M. Webb, ¶ 3; Declaration of D. Serrano, ¶ 3; Declaration of R. Mira, ¶ 3; Declaration of J.A. Maloy, ¶ 3; Declaration of R. Leyvas, ¶ 3; Declaration of R. Judkins, ¶ 3; Declaration of D. Franklin, ¶ 3; Declaration of L.D. Craig, ¶ 3; and Declaration of L. Hood, ¶ 6. The defendants' Motion for Summary Judgment, thus, should be granted on this claim for all defendants.

V
The plaintiff further alleges that defendants Morris, Hood, Yarborough, Mellot, Amero, and Downs, acting in supervisory roles, failed to properly train and supervise subordinates, and stood by and watched and failed to intervene as others used excessive force. A supervisory official may be liable under Section 1983 only if he was personally involved in the constitutional deprivation, or if there was a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation. Redman v. County of San Diego, 942 F.2d 1435, 1446 (9th Cir.1991), cert. denied, 502 U.S. 1074, 112 S.Ct. 972, 117 L.Ed.2d 137 (1992); Hansen v. Black, 885 F.2d 642, 645-46 (9th Cir. 1989).
A sufficient causal connection may be established by showing that the supervisor set in motion a series of acts by others, which the supervisor knew or reasonably should have known would cause others to inflict the injury. Bergquist v. County of Cochise, 806 F.2d 1364, 1370 (9th Cir.1986); Ybarra v. Reno Thunderbird Mobile Home Village, 723 F.2d 675, 680-81 (9th Cir.1984); Johnson v. Duffy, 588 F.2d 740, 743-44 (9th Cir.1978). Supervisory defendants may be liable if the alleged deprivation resulted from the failure to properly train or supervise personnel, or from a policy or custom for which the defendant was responsible. Ybarra, 723 F.2d at 680.
There is no evidence that any of the supervisory defendants were responsible for training or supervising other correctional officers, or reasonably should have known or did know that any correctional officer would inflict an impermissible injury on an inmate or would otherwise treat an inmate in a constitutionally deficient manner. Thus, there is an insufficient causal connection between the alleged constitutional deprivations and defendants Morris, Hood, Yarborough, Mellot, Amero and Downs, and defendants' Motion for Summary Judgment should be granted on this claim.

VI
A prisoner's constitutional rights under the Eighth Amendment may also may be violated by prison conditions that render his confinement cruel and unusual. Rhodes v. Chapman, 452 U.S. 337, 347, 101 S.Ct. 2392, 2399, 69 L.Ed.2d 59 (1981). To establish this type of claim, the inmate must present specific facts demonstrating that prison conditions have denied him "the minimal civilized measures of life's necessities." Id.; Wilson v. Seiter, 501 U.S. 294, 302-03, 111 S.Ct. 2321, 2326-27, 115 L.Ed.2d 271 (1991). To determine whether a condition of confinement violates the Eighth Amendment depends upon an objective determination that the deprivation is sufficiently serious and a subjective determination that prison officials acted with "deliberate indifference" in allowing the offending condition to occur. Wilson, 501 U.S. at 303, 111 S.Ct. at 2326-27.
Water and functioning plumbing are basic necessities of civilized life. Keenan v. Hall, 83 F.3d 1083, 1091 (9th Cir.1996); Anderson v. County of Kern, 45 F.3d 1310, 1314 (9th Cir.), cert. denied, ___ U.S. ___, 116 S.Ct. 306, 133 L.Ed.2d 210 (1995). Assuming plaintiff's contention that he was without water for 36 hours to be true, defendants have shown this does not constitute a *1262 violation of the Eighth Amendment.[6] First, deprivation of sanitation for short periods of time during violent episodes is justifiable and not a constitutional violation. Anderson, 45 F.3d at 1314; see Hoptowit v. Ray, 682 F.2d 1237, 1258 (9th Cir.1982) (in evaluating conditions of confinement, the length of time the prisoners go without basic human needs may be considered). Second, the defendants had a legitimate penological reason to turn off the water for a limited period of time. Some inmates, in the past, had used the water to flood the cell block, creating a dangerous condition for both prison officials and other inmates. (Defendants' Motion for Summary Judgment, Downs Decl., ¶ 5). Lastly, the plaintiff was provided with liquids with every meal during the 36 hour period. Id. The plaintiff, thus, has not shown a constitutional violation under the Eighth Amendment as he fails to show that the deprivation was sufficiently serious and that defendants were deliberately indifferent to the deprivation. The defendants' Motion for Summary Judgment should be granted on this claim.

VII
Deliberate indifference to a prisoner's serious medical needs also violates the Eighth Amendment. Carlson v. Green, 446 U.S. 14, 19, 100 S.Ct. 1468, 1472, 64 L.Ed.2d 15 (1980); Estelle v. Gamble, 429 U.S. 97, 104, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976). Deliberate indifference in violation of the Eighth Amendment's proscription against cruel and unusual punishment exists when a prison official knows that an inmate faces a substantial risk of serious harm to an inmate's health and fails to take reasonable measures to abate the risk. Farmer v. Brennan, 511 U.S. 825, 826-29, 114 S.Ct. 1970, 1974, 128 L.Ed.2d 811 (1994); Wallis v. Baldwin, 70 F.3d 1074, 1077 (9th Cir.1995). To prove deliberate indifference, the plaintiff must show that the defendant knew of the risk of serious harm and disregarded the risk by failing to take reasonable measures to abate it. Farmer, 511 U.S. at 846-48, 114 S.Ct. at 1984. A defendant's requisite knowledge of the risk of serious harm can be demonstrated by circumstantial evidence. Id. at 840-42, 114 S.Ct. at 1981. As with unconstitutional prison conditions, "[t]he deliberate indifference standard contains both an objective component (was the deprivation sufficiently serious?) and a subjective component (did the officials act with a sufficiently culpable state of mind?)." Caldwell v. Moore, 968 F.2d 595, 602 (6th Cir.1992) (citing Wilson, 501 U.S. at 298, 111 S.Ct. at 2323-24).
Deliberate indifference to an inmate's serious medical needs may be manifested in two ways: either when prison officials deny, delay or intentionally interfere with medical treatment, or by the way that prison physicians provide medical care. McGuckin v. Smith, 974 F.2d 1050, 1060 (9th Cir.1992); Hutchinson v. United States, 838 F.2d 390, 394 (9th Cir.1988). In either case, however, the indifference to the inmate's medical needs must be substantial; inadequate treatment due to negligence, inadvertence, or differences in judgment between an inmate and medical personnel does not rise to the level of a constitutional violation. Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir.1981). Moreover, when a claim alleges a delay of medical treatment, the inmate must show that the delay was harmful. McGuckin, 974 F.2d at 1060.
The plaintiff claims that he did not receive prompt and adequate medical treatment after his cell extraction. The evidence, however, belies this claim. Defendants Downs and Buelna declare that plaintiff was seen immediately after his extraction by a medical technical assistant. (Defendants' Motion for Summary Judgment, Downs Decl., ¶ 7; Buelna Decl., ¶ 5). Even if the treatment was delayed forty-five minutes, as plaintiff states in his affidavit, plaintiff has presented no evidence showing the delay was harmful to him. (Plaintiff's Affidavit in Opposition to Defendants' Motion for Summary *1263 Judgment, p. 2). Further, there is no evidence that any treatment plaintiff was provided was constitutionally deficient. The medical records show that by October 19, 1994, plaintiff's fracture was healing, there was stable alignment and no pain was elicited from plaintiff. Although the plaintiff alleges that he was not given a skin graft, there is no evidence that a skin graft was medically required. Thus, summary judgment should be granted for defendants on plaintiff's claim that he received constitutionally deficient medical care.

VIII
The plaintiff also brings claims for violation of 42 U.S.C. §§ 1981 and 1985(3). Section 1981 provides that no person shall be denied equal rights under the law on account of race. An essential element of a claim under Section 1981 is that the defendants must have acted with the intent to discriminate on the basis of race. General Building Contractors Assoc., Inc. v. Pennsylvania, 458 U.S. 375, 391, 102 S.Ct. 3141, 3150, 73 L.Ed.2d 835 (1982); Evans v. McKay, 869 F.2d 1341, 1344 (9th Cir.1989). Section 1985(3) prohibits conspiracies to deprive "any person or class of persons of the equal protection of the laws, or of the equal privileges and immunities under the laws...." To avoid interpreting Section 1985(3) as a general federal tort law, the Supreme Court has emphasized that, as under Section 1981, the plaintiff must prove as an element of the cause of action "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." Bray v. Alexandria Women's Health Clinic, 506 U.S. 263, 268, 113 S.Ct. 753, 758, 122 L.Ed.2d 34 (1993) (quoting Griffin v. Breckenridge, 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971)). The plaintiff has presented absolutely no evidence that defendants were motivated by a race-based animus. Accordingly, summary judgment should be granted in favor of defendants on these claims.

IX
The defendants assert that they are entitled to qualified immunity for their actions. If a reasonable public officer in the defendants' position could have believed that his conduct was lawful in light of clearly established law and the information the officer possessed at the time the conduct occurred, he is protected from liability by qualified immunity. Hunter v. Bryant, 502 U.S. 224, 227, 112 S.Ct. 534, 536, 116 L.Ed.2d 589 (1991) (per curiam); Anderson v. Creighton, 483 U.S. 635, 641, 107 S.Ct. 3034, 3040, 97 L.Ed.2d 523 (1987); Bator v. State of Hawaii, 39 F.3d 1021, 1027 (9th Cir.1994); Scott v. Henrich, 39 F.3d 912, 914 (9th Cir.1994), cert. denied, ___ U.S. ___, 115 S.Ct. 2612, 132 L.Ed.2d 855 (1995); Allen v. City and County of Honolulu, 39 F.3d 936, 938 (9th Cir.1994).
The qualified immunity test requires three inquiries: 1) the identification of the specific right allegedly violated; 2) a determination whether the right was so clearly established as to alert a reasonable officer to its constitutional parameters; and 3) a determination whether a reasonable officer could have believed his conduct was lawful. Sloman v. Tadlock, 21 F.3d 1462, 1467 (9th Cir.1994); Romero v. Kitsap County, 931 F.2d 624, 627 (9th Cir.1991); see Act Up!/Portland v. Bagley, 988 F.2d 868, 871 (9th Cir.1993). The first two inquiries present pure questions of law. Romero v. Kitsap County, 931 F.2d at 628. The third inquiry, although ultimately a legal question, may require some factual determinations, as well. Romero v. Kitsap County, 931 F.2d at 628; see Act Up!/Portland v. Bagley, 988 F.2d at 873. The court must resolve the first two inquiries before considering the third. See Romero v. Kitsap County, 931 F.2d at 628.
As discussed above, the law clearly was established in 1994 that prison officials could not use excessive force, could not deny plaintiff the "minimum civilized measures of life's necessities," and could not be deliberately indifferent to a prisoner's medical needs. Whitley, 475 U.S. at 320-21, 106 S.Ct. at 1084-85; Rhodes, 452 U.S. at 347, 101 S.Ct. at 2399-2400; Estelle, 429 U.S. at 106, 97 S.Ct. at 292. The burden then shifts to defendants to establish there was no violation of plaintiff's constitutional rights, or that their conduct was reasonable even though it *1264 might have violated constitutional standards. Romero, 931 F.2d at 627. Because this Court has found that defendants did not violate plaintiff's Eighth Amendment rights, there is no need to continue the qualified immunity analysis. Hallstrom v. City of Garden City, 991 F.2d 1473, 1482 (9th Cir.), cert. denied, 510 U.S. 991, 114 S.Ct. 549, 126 L.Ed.2d 450 (1993); Act Up!/Portland, 988 F.2d at 871. The defendants, thus, have established their qualified immunity regarding plaintiff's Eighth Amendment claims.

X
When defendants are public employees, the plaintiff must first submit a written claim to the public entity that employs them before filing a lawsuit seeking monetary damages for violations of California law. Cal. Gov't Code § 945.4, 950.2. Under California law, claims procedures apply to inmates. Cal. Gov't Code § 945.6(c). The filing of a claim is a condition precedent to the maintenance of an action under state law and an integral part of the cause of action. Karim-Panahi v. Los Angeles Police Dept., 839 F.2d 621, 627 (9th Cir.1988); Williams v. Horvath, 16 Cal.3d 834, 842, 129 Cal.Rptr. 453, 548 P.2d 1125 (1976). The complaint must allege compliance with the claims procedure, and failure to make this allegation provides grounds to dismiss the claims. Karim-Panahi, 839 F.2d at 627; Pacific Tel. & Tel. Co. v. County of Riverside, 106 Cal. App.3d 183, 188, 165 Cal.Rptr. 29 (1980). Here, plaintiff alleges in the unverified Second Amended Complaint that he "filed with the Clerk of the State Board of Control for damages," and "it was denied." (SAC, ¶ 29). Although plaintiff presents no evidence to support this claim, the defendants have presented no evidence refuting it, and this Court will assume it to be true.
This Court, nevertheless, declines to retain jurisdiction over plaintiff's pendent state claims because no federal cause of action remains. 28 U.S.C. § 1367(c); Medrano v. City of Los Angeles, 973 F.2d 1499, 1505-06 (9th Cir.1992), cert. denied, 508 U.S. 940, 113 S.Ct. 2415, 124 L.Ed.2d 638 (1993); Cook, Perkiss & Liehe, Inc. v. Northern Cal. Collection Serv. Inc., 911 F.2d 242, 247 (9th Cir.1990) (per curiam).

RECOMMENDATION
IT IS RECOMMENDED that the Court issue an Order (1) approving and adopting the Report and Recommendation; (2) granting summary judgment for defendants on all of plaintiff's federal claims, and entering Judgment accordingly; and (3) declining to exercise jurisdiction over plaintiff's pendent state law claims, and dismissing those claims without prejudice.
DATE: Feb. 3, 1997.
NOTES
[1] Since the plaintiff was not a pre-trial detainee at the time, he cannot assert a Fourth Amendment claim, rather, it is the Eighth Amendment that is implicated in excessive force claims by a convicted prisoner. Graham v. Connor, 490 U.S. 386, 393-95 n. 10, 109 S.Ct. 1865, 1870-71 n. 10, 104 L.Ed.2d 443 (1989).
[2] Because the allegations against these defendants are substantially the same in the original and Second Amended Complaint, this Court considers the answer of the defendants' Morris, Amero, Downs, Buelna and Austin to the original complaint also to be the answer to the Second Amended Complaint. Stanley Works v. Snyder-general Corp., 781 F.Supp. 659, 664-65 (E.D.Cal. 1990). Moreover, a motion for summary judgment is a proper response to a complaint. Fuller v. Frank, 916 F.2d 558, 563 (9th Cir.1990) (defendant's failure to answer the amended complaint is irrelevant, as a motion for summary judgment is a proper response to a complaint)
[3] The Court records do not show that service of process was effected on defendants Thurman, Mellot, Hernandez, Gaunt, Martinez, Tome, Stivas, and Johnson.
[4] In Madrid v. Gomez, the court described the use of a 38 mm gas gun, which shoots rubber blocks at high velocity. Madrid v. Gomez, 889 F.Supp. 1146, 1162 n. 21 (N.D.Cal.1995). The rubber blocks, which measure approximately one and one-half inches across, ricochet inside the cell and can cause bodily injury. Id.
[5] Defendants Morris and Amero acted only as observers during the cell extractions. (Defendants' Motion for Summary Judgment, Morris Decl., ¶ 4; Declaration of A.H. Amero, ¶ 3).
[6] The plaintiff does not, however, identify which, if any, of the defendants was responsible for the water shut off; thus, there is an insufficient causal connection between the acts or omissions to act of any defendant and the alleged constitutional deprivation. Hansen v. Black, 885 F.2d at 646 (need requisite causal connection to constitutional deprivation for liability); Leer v. Murphy, 844 F.2d 628, 633 (9th Cir.1988).