John Allen CALDWELL,
Plaintiff–Appellant,

v.

Woodford County Chief Jailer, James MOORE, et al., Defendants,

Harry Stephen Tracy; Rick Adkins; Daniel E. Clark; W. Keith Broughton, Defendants–Appellees.

No. 91–5852.

United States Court of Appeals, Sixth Circuit.

Argued May 5, 1992.

Decided July 1, 1992.

Dean W. Bucalos (argued and briefed), Robert J. Brown, Brown, Bucalos, Santana & Bratt, Lexington, Ky., for plaintiff-appellant.

W. Henry Jernigan, Jr., James L. Gay, Jacqueline Syers Duncan (argued and briefed), Jackson & Kelly, Ronnie G. Dunnigan, Ronnie G. Dunnigan Law Offices, Lexington, Ky., W. Kenneth Nevitt, C. Thomas Hectus (argued and briefed), Williams & Wagoner, Louisville, Ky., for defendants-appellees.

Before: KENNEDY and SUHRHEINRICH, Circuit Judges; and WEBER, District Judge.*

SUHRHEINRICH, Circuit Judge.

Plaintiff John Allen Caldwell brought this action under 42 U.S.C. § 1983 against various officials of the Woodford County Jail and four police officers alleging violation of his rights under the Eighth Amendment and the Fourteenth Amendment of the United States Constitution. Specifically, Caldwell alleged that the use of a stun gun and a straitjacket against him and the subsequent deprivation of medical care constituted cruel and unusual punishment. The district court granted summary judgment for the defendants based on qualified immunity. For the following reasons, we affirm the district court.

I

In July 1988, Caldwell was being held in the Woodford County Jail pending his transfer to the Kentucky State Prison system. Caldwell had been convicted of receiving stolen property. While incarcerated at the jail, Caldwell was involved in an altercation with three other inmates. Due to the altercation, Caldwell was removed from the general jail population and placed in an isolation cell.

On July 15, 1988, after having been in the isolation cell for several days, Caldwell asked to be let out so that he could get some fresh air and water and walk up and down the narrow hallway in front of the isolation cell. Although his request was denied, Caldwell stated that he was provided with food and water throughout the time he was confined in the isolation cell.

Caldwell stated that every time his request to be let out of the isolation cell was denied he would kick the door and shout for the jailer. Caldwell stated that he

---

* The Honorable Herman J. Weber, United States District Judge for the Southern District of Ohio, sitting by designation.

would shout for a few minutes and kick the cell door, then pause and repeat this conduct. Deputy jailer Andrew Sutherland informed Caldwell that he would be placed in a straitjacket if he continued to shout and kick the cell door. Nonetheless, Caldwell continued this conduct into the late evening on July 15.

After seven hours of this conduct, Sutherland contacted the City of Versailles, Kentucky, Police Department and requested assistance in restraining Caldwell. Between 11:00 p.m. and 12:00 a.m. four or five police officers arrived at the jail. Those police officers were Ricky Allen Adkins, William Keith Broughton, Harry Steven Tracy, Daniel Eugene Clark and Russell Gentry Yocum.[1] Caldwell was still in an excited state, yelling and kicking on the cell door, when the police officers arrived at the jail.

One of the police officers picked up an electric stun gun that Chief Jailer James Moore had purchased and kept in a desk in the jail office. Police officer Ricky Allen Adkins took the electric stun gun with him as he, the other police officers and Andrew Sutherland went to Caldwell's cell. The electric stun gun was taken in the presence of the other police officers, all of whom had knowledge it was taken, and with the consent of Andrew Sutherland.

None of the police officers had any formal training in the use of an electric stun gun, knew the capabilities of this particular electric stun gun, or received any express authorization to use an electric stun gun in the course of their employment. None of the police officers had received any training or education in the handling of inmates who were extremely agitated, upset or excited, or suffering from mental illness or emotional disturbance. Nor were any of the jailers instructed as to when medical treatment should be administered to inmates. None of the police officers had any training in the use of a straitjacket.

Officer Adkins spoke briefly with Caldwell, informing him that the police were called to quiet him. Caldwell indicated that he would continue to shout and kick until released from his cell. Caldwell then kicked the cell door again. At that moment, at least three of the police officers entered the cell and Adkins shot Caldwell with the electric stun gun several times. Caldwell collapsed and he was placed in a straitjacket. The officers then left Caldwell alone on the floor of the cell.

Within one hour of this incident, Caldwell had crawled along the cell floor and rubbed the straitjacket against a sharp edge of the cell door until he eventually was able to remove it. Caldwell alleged that he suffered chest pains and burns from the stun gun, but he makes no claim of physical injury from the straitjacket. Caldwell now contends that he suffers from post-traumatic stress disorder arising from this episode.

The day after this incident, Caldwell asked Sutherland if he could see a doctor because he was in pain from being shot with the stun gun. According to Caldwell, Sutherland told him that he didn't need to see a doctor, but Sutherland agreed to inform Chief Jailer James Moore about Caldwell's request. The day following his request to Sutherland, Caldwell was taken to the Woodford County Hospital where he was examined by a doctor. Caldwell stated that after the examination, which included an examination of his heart, the doctor told him there was nothing he could do except give him medication for the pain. Caldwell was returned to the Woodford County Jail and he was transferred to the state correctional system either the next day or the day after. Following his transfer to the state correctional system, Caldwell visited a doctor who gave him medication for the pain he was experiencing.

Based on these facts, Caldwell filed this lawsuit pursuant to 42 U.S.C. § 1983. Caldwell named the following persons as defendants: Rick Allen Adkins, W.K.

---

1. Caldwell names Tracy as being present. Tracy denied that he was present. The trial court ruled that whether Tracy was present is an issue of material fact. The other referenced police officers have admitted being present. Given our disposition of this case, we need not determine with precision the identity of all the police officers involved in the incident at the jail.

Broughton, Harry Stephen Tracy, David Eugene Clark, James Moore, and Andrew Sutherland. Adkins, Broughton, Tracy, and Clark are employed by the City of Versailles, Kentucky, as police officers. Moore is the Chief Jailer at the Woodford County Jail, and Sutherland, as indicated above, is a deputy jailer at the Woodford County Jail. Caldwell claims that the defendants used excessive force in responding to the disturbance at the jail, and that such "excessiveness" constituted cruel and unusual punishment in violation of the Eighth Amendment. Specifically, Caldwell alleged that use of the stun gun - and straitjacket constituted cruel and unusual punishment because it amounted to excessive force. Caldwell also claims that the defendants violated his Eighth Amendment rights by showing deliberate indifference to his serious medical needs which arose from the incident with the stun gun.

The case was referred to a magistrate for a report and recommendation. The magistrate made factual findings and concluded that "a reasonable jury could not conclude that the actions of the defendants in using the stun gun and the straitjacket for the purpose of restraining the plaintiff and restoring order to the jail were solely for punishment or that they were motivated by a malicious or sadistic intent to cause the plaintiff harm." (Jt.App. at 411). The magistrate also concluded that the defendants had not exhibited "deliberate indifference" to Caldwell's medical needs. Accordingly, the magistrate recommended granting the defendants qualified immunity.

The district court, after conducting a de novo review, granted summary judgment in favor of the defendants based on qualified immunity. This appeal followed.

## II

■ Caldwell's notice of appeal states that he is appealing from the June 10, 1991, order "sustaining the defendants' motion for summary judgment; overruling plaintiff's objections to the Magistrate's proposed Findings of Fact and Recommendation and affirming the Magistrate's Report and Recommendations and dismissing this action." Caldwell did not appeal from an earlier order denying him leave to amend his complaint. Under Rule 3(c) of the Federal Rules of Appellate Procedure, where a notice of appeal specifies a particular order, only the specified issues related to that order may be raised on appeal. *See Wilson v. Firestone Tire & Rubber Co.*, 932 F.2d 510 (6th Cir.1991). The defendants contend that Rule 3(c) prevents this court from considering Caldwell's claim that the district court erroneously denied him leave to amend his complaint because this order was not listed in the notice of appeal.

■ This contention is without merit. The denial of a request for leave to file an amended complaint is not appealable. *Marathon Petroleum Co. v. Pendleton*, 889 F.2d 1509, 1511 n. 1 (6th Cir.1989). However, such an order is appealable after the entry of a final judgment because the final judgment calls into question the propriety of all the nonfinal rulings of the district court. *See McLaurin v. Fischer*, 768 F.2d 98, 102 (6th Cir.1985).

Thus, in the present case, Caldwell could not appeal the denial of leave to amend until after the entry of summary judgment. After summary judgment was granted, Caldwell appealed that final judgment without including the previous order denying leave to amend in the notice of appeal. However, the defendants identify no prejudice as a result of this omission and we conclude that the notice of appeal was adequate to put the opposing parties on notice of the issues Caldwell was appealing. *See Taylor v. United States*, 848 F.2d 715, 717–18 (6th Cir.1988) (although notice of appeal only specified a portion of the district court's order, appellant is allowed to challenge other portions because it did not prejudice the appellee). We therefore turn to the merits of Caldwell's claim.

■ Rule 15(a), Fed.R.Civ.P., mandates that leave to amend "shall be freely given when justice so requires." However, leave to amend a complaint may be denied when it would result in undue delay, prejudice to the opposing party, or the repeated failure

to cure deficiencies in the complaint. *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962); *Duchon v. Cajon Co.*, 791 F.2d 43, 48 (6th Cir.1986). The grant or denial of leave to amend rests within the discretion of the district court. *Id.*

Here, the district court clearly stated three reasons for denying Caldwell leave to amend: (1) discovery was closed; (2) new parties and new causes of action were to be added by the amendment; and (3) there was no explanation for the delay in filing the motion. As noted, undue delay and/or prejudice to the opposing party are valid bases for denying leave to amend. Because Caldwell does not offer persuasive reasons for the delay in amending his complaint, the district court did not abuse its discretion in denying Caldwell leave to amend. *Duchon*, 791 F.2d at 48.

### III

■ We now turn to Caldwell's claim that the district court erred in granting qualified immunity to the defendants. We review the grant of qualified immunity de novo. *Hall v. Shipley*, 932 F.2d 1147, 1150 (6th Cir.1991).

"Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). The question whether an official is protected by qualified immunity turns on "the objective legal reasonableness" of the action, assessed in light of the legal rules that were "clearly established" at the time the action was taken. *Id.* at 818–19, 102 S.Ct. at 2738–39; *Long v. Norris*, 929 F.2d 1111, 1114–15 (6th Cir.), *cert. denied*, —— U.S. ——, 112 S.Ct. 187, 116 L.Ed.2d 148 (1991).

■ Under this objective legal reasonableness standard, individual claims of immunity must be analyzed on a case by case basis to determine whether the plaintiff's federal or constitutional rights were so clearly established when the alleged misconduct was committed that any official in the defendant's position would understand that his conduct violates those rights. *See Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987); *Williams v. Ellington*, 936 F.2d 881, 885 (6th Cir.1991); *Long*, 929 F.2d at 1115. The official will be immune "if officers of reasonable competence could disagree" on whether the conduct violated the plaintiff's rights. *Gossman v. Allen*, 950 F.2d 338, 341 (6th Cir.1991) (quoting *Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986)). The particular circumstances of the given case need not have been previously held illegal for the right to be "clearly established," but the right must be defined in a manner that puts a reasonable official on notice that his actions are illegal or unconstitutional. *See Marsh v. Arn*, 937 F.2d 1056, 1067 (6th Cir.1991). To determine whether a right is clearly established, a court may rely on decisions of the United States Supreme Court, the courts of its own circuit, the highest state court in which it sits, and under very limited circumstances, the courts from other federal circuits. *Williams*, 936 F.2d at 885; *Long*, 929 F.2d at 1115.

■ Caldwell contends that the defendant police officers violated the Eighth Amendment's prohibition against cruel and unusual punishment by shooting him with the stun gun and placing him in the straightjacket. It has been widely held that the unjustified infliction of bodily harm upon a prisoner by a correctional officer gives rise to liability under 42 U.S.C. § 1983. *Franklin v. Aycock*, 795 F.2d 1253, 1258 (6th Cir.1986). However, liability will be imposed only if the alleged assault arises to the level of a constitutional deprivation.

Recently, the Supreme Court held in the case of *Hudson v. McMillian*, —— U.S. ——, ——, 112 S.Ct. 995, 999, 117 L.Ed.2d 156, 165–66 (1992) that

whenever prison officials stand accused of using excessive physical force in viola-

tion of the Cruel and Unusual Punishments clause, the core judicial inquiry is that set out in *Whitley [v. Albers,* 475 U.S. 312, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986) ]: whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.

Thus, the inquiry in all cases where prisoners allege the excessive use of force is whether the force was applied "maliciously for the purpose of causing harm." *Haynes v. Marshall,* 887 F.2d 700, 703 (6th Cir. 1989). To determine such motivations on the part of correctional officers, courts should consider the reasons or motivation for the conduct, the type and extent of force applied, and the extent of inflicted injury. *See Whitley,* 475 U.S. at 320–22, 106 S.Ct. at 1084–86.

■ Caldwell contends that the manner in which the stun gun was used here was a per se violation of the Eighth Amendment because the officers were not trained or authorized to use the stun gun. Caldwell contends this lack of training indicates that the use of stun guns against prisoners was prohibited because it was too dangerous. *Cf. Michenfelder v. Sumner,* 860 F.2d 328 (9th Cir.1988) (prison had policy regulating the use of taser guns). Failure to train liability, however, attaches to a municipality rather than to an individual defendant. *See Hill v. McIntyre,* 884 F.2d 271, 275 (6th Cir.1989). The lack of a policy regulating the use of stun guns does not render the use of stun guns per se unconstitutional; liability must be determined on the facts of each case. *Michenfelder,* 860 F.2d at 336.

There is no clearly established precedent in the Supreme Court, this court, or in Kentucky holding the use of stun guns improper per se in the prison context. The most analogous case from this circuit is *Russo v. City of Cincinnati,* 953 F.2d 1036, 1044–45 (6th Cir.1992), where this court analyzed the use of a taser by police officers in an excessive force case. In *Russo,* we granted qualified immunity to the officers and noted that the use of a taser in order to avoid a dangerous situation or the resort to even greater force did not violate clearly established law. *Id.* at 1045.

Caldwell produces no relevant precedent that clearly establishes a prohibition on the use of a stun gun as a means to subdue an inmate. Moreover, the cases Caldwell does rely upon are from other jurisdictions. As noted, the circumstances in which precedent from other jurisdictions will create clearly establish law in this circuit are very limited. *Williams,* 936 F.2d at 885. Under *Russo,* the use of a taser is permissible when resort to even greater force may be necessary. *Russo,* 953 F.2d at 1045. In this case, it was not unreasonable for the police officers to conclude that the use of the stun gun was necessary to avoid using even greater force against Caldwell.

Further, we are aware of a number of cases that support similar uses of force to maintain discipline in the prison context. *See, e.g., Michenfelder,* 860 F.2d at 334–36 (use of taser does not violate Eighth Amendment); *Soto v. Dickey,* 744 F.2d 1260 (7th Cir.1984) (use of mace), *cert. denied,* 470 U.S. 1085, 105 S.Ct. 1846, 85 L.Ed.2d 144 (1985); *Spain v. Procunier,* 600 F.2d 189, 195 (9th Cir.1979) (use of tear gas); *Clemmons v. Greggs,* 509 F.2d 1338, 1340 (5th Cir.) (use of tear gas), *cert. denied,* 423 U.S. 946, 96 S.Ct. 360, 46 L.Ed.2d 280 (1975); *Rubins v. Roetker,* 737 F.Supp. 1140 (D.Col.1990) (use of stun gun), *aff'd,* 936 F.2d 583 (10th Cir.1991); *Blair–El v. Tinsman,* 666 F.Supp. 1218 (S.D.Ill.1987) (use of chemical spray). Given the number of cases which have upheld the use of stun guns or chemical agents against recalcitrant prisoners, we cannot say that it was clearly established that the use of a stun gun against Caldwell was a per se violation of the Eighth Amendment. Indeed, as the Seventh Circuit noted "[t]he Supreme Court has never held, nor have we or any other court of appeals, so far as we can determine, that the use of tear gas or a chemical agent is a per se violation of the Eighth Amendment, whether an inmate is locked in his cell or not." *Soto,* 744 F.2d at 1270. This observation also holds true for the use of stun guns.

Our conclusion that the defendants' use of a stun gun against Caldwell was not a per se violation of the Eighth Amendment does not immunize all use of such devices against inmates. *See Michenfelder,* 860

F.2d at 336 (taser may not be used for the sole purpose of punishment or the infliction of pain); *Soto,* 744 F.2d at 1270 (use of chemical agents must be evaluated under all the circumstances). Rather, the inquiry in each case must be "whether force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson,* — U.S. at —, 112 S.Ct. at 999, 117 L.Ed.2d at 166. When police officers act with the malicious intent to cause harm, they violate the Eighth Amendment. In making this determination, we are to be guided by "factors [such] as the need for application of force, the relationship between the need and the amount of force that was used [and] the extent of injury inflicted." *Whitley,* 475 U.S. at 320–21, 106 S.Ct. at 1084–85.

Applying these principles to the facts of this case, the district court found that the stun gun and straitjacket were employed in a good-faith effort to restore discipline and order in the jail and not for the sole purpose of causing the plaintiff harm. Caldwell contends that this conclusion is erroneous because there was no need for the application of force. Caldwell points out that there is no evidence in the record which indicates that his actions were inciting other prisoners to riot or that there was any jail emergency. He also notes that he posed no danger to himself and that his kicking of the cell door could not injure his foot because he was wearing shoes. Finally, Caldwell was in isolation and there is no evidence that other inmates in the jail were disturbed by his conduct. Under these circumstances, Caldwell claims that there were numerous alternatives to using force available to the defendants.

■ Caldwell further contends that the isolation cell was hot and that he was thirsty and cramped. Significantly, he does not allege that these conditions violated the Eighth Amendment as cruel and unusual conditions of confinement. Absent such a claim, we do not consider these conditions relevant to our inquiry. *See Hudson v. Palmer,* 468 U.S. 517, 524, 104 S.Ct. 3194, 3199, 82 L.Ed.2d 393 (1984) (imprisonment carries with it the loss of many significant rights, all of which are justified by the institutional needs of the prison system). Moreover, we note that the record indicates that Caldwell was not denied food or water during his stay in the isolation cell.

We believe Caldwell's arguments mistake the purpose of the Eighth Amendment. The Supreme Court has cautioned against the expansive application of the Eighth Amendment in the prison context. *See Rhodes v. Chapman,* 452 U.S. 337, 351, 101 S.Ct. 2392, 2401, 69 L.Ed.2d 59 (1981). In considering whether the Eighth Amendment has been violated it must be remembered that such inquiries "spring from constitutional requirements and that judicial answers to them must reflect that fact rather than a court's idea of how best to operate a detention facility." *Id.* With these principles of the proper judicial role in mind, we conclude that there were limited options available to the police officers under the circumstances confronting the officers in this case.

Caldwell's contentions boil down to a dispute over the reasonableness of the police officer's use of force to enforce the jail officials' order that Caldwell be quiet. Caldwell claims that the use of force here was out of proportion to the need for order and that the officers should have talked to him or tried other means short of the stun gun and straitjacket. We will not require police officers responding to a jail disturbance to second-guess the correctional officials' judgment in this manner. Caldwell had already demonstrated a propensity for violence by fighting with other inmates. This was the reason he was placed in the isolation cell. Caldwell was shouting and kicking for seven hours before the police were summoned. The jail has a legitimate interest in having inmates obey orders. "Inmates cannot be permitted to decide which orders they will obey, and when they will obey them. Someone must exercise authority and control." *Soto,* 744 F.2d at 1267. In this case, deputy jailer Sutherland ordered Caldwell to stop shouting and kicking but he did not obey. The police officers called to enforce this order were entitled to use force in reliance upon the reasonable judgment of the correctional officials.

Nor are we willing to accept Caldwell's claim that numerous other alternatives were available to the jail officials. Caldwell's proposed alternatives involve either allowing the inmates to determine what orders they will obey or forcing jail officials to enter the inmates' cells and physically subdue them without injuring themselves or the inmates. It is not unreasonable for the jail officials to conclude that the use of a stun gun is less dangerous for all involved than a hand to hand confrontation. *See Michenfelder*, 860 F.2d at 335–36. We agree with the Seventh Circuit's observation that:

> When an order is given to an inmate there are only so many choices available to the correctional officer. If it is an order that requires action by the institution, and the inmate cannot be persuaded to obey the order, some means must be used to compel compliance, such as a chemical agent or physical force. While experts who testified on behalf of the plaintiffs suggested that rather than seek to enforce orders, it was possible to leave the inmate alone if he chooses not to obey a particular order, and wait him out, experience and common sense establish that a prison cannot be operated in such a way.

*Soto*, 744 F.2d at 1257.

The use of the stun gun and straitjacket did not violate the Eighth Amendment.

### IV

 . We now address Caldwell's claim that Jailers Sutherland and Moore were "deliberately indifferent" to his serious medical needs arising from the stun gun incident. The appropriate inquiry when an inmate alleges that prison officials failed to attend to serious medical needs is whether the officials exhibited "deliberate indifference." *Hudson*, —— U.S. at ——, 112 S.Ct. at 999, 117 L.Ed.2d at 165; *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). The Supreme Court recently clarified this inquiry, noting that the deliberate indifference standard contains both an objective component (was the deprivation sufficiently serious?) and a subjective component (did the officials act with a sufficiently culpable state of mind?). *Wilson v. Seiter*, —— U.S. ——, ——, 111 S.Ct. 2321, 2323, 115 L.Ed.2d 271, 279 (1991).

Caldwell fails both prongs of this test. Under the objective component, Caldwell did not suffer a serious deprivation because his injuries were not serious enough to require immediate medical attention. When Caldwell was taken to the doctor one day after his request, the doctor found no serious injury. Although Caldwell was in some pain, the doctor merely prescribed mild pain medication. There is no evidence in the record that Caldwell suffered any significant injury from this episode. Thus, Caldwell did not suffer a serious deprivation because his medical needs were not "serious" the day after the incident when his request for immediate treatment was denied.

Second, Caldwell produces no evidence that Sutherland or Moore acted with a culpable state of mind. Caldwell was taken to the doctor after one day. A few days later, after his transfer to the Kentucky State Prison system, he again visited a doctor. Caldwell could have received pain medication on his first visit to the doctor. Under these circumstances, the one day delay was not an "unnecessary and wanton infliction of pain" that violates the cruel and unusual punishment clause. *Id.* at ——, 111 S.Ct. at 2323, 115 L.Ed.2d at 279.

### V

In conclusion, we find no per se violation of the Eighth Amendment and no clearly established prohibition on the use of a stun gun against an incarcerated prisoner in order to maintain order in a jail. On the specific facts of this case, we find the use of a stun gun and a straitjacket necessary for the legitimate penological interest of maintaining order. We also conclude that Jailers Sutherland and Moore were not deliberately indifferent to Caldwell's medical needs. Accordingly, the Eighth Amendment was not violated and the defendants are entitled to qualified immunity.

AFFIRMED.