**Floyd JENNINGS, Plaintiff–Appellant,**

v.

**PEIFFER, Sergeant, et al., Defendants–Appellees.**

No. 03–2616.

United States Court of Appeals, Sixth Circuit.

Sept. 17, 2004.

**644**

Before: GUY and SUTTON, Circuit Judges; and CARR, District Judge.*

### ORDER

Floyd Jennings, proceeding pro se, appeals a district court judgment dismissing his civil rights complaint filed pursuant to 42 U.S.C. § 1983. His appeal has been referred to a panel of this court pursuant to Rule 34(j)(1), Rules of the Sixth Circuit. Upon examination, the panel unanimously agrees that oral argument is not needed. Fed. R.App. P. 34(a).

Although currently incarcerated at the Ionia Maximum Correctional Facility, the events forming the basis of this lawsuit occurred while Jennings was a prisoner at the Oaks Correctional Facility. On December 27, 2001, a deputy warden of the Oaks Correctional Facility authorized a forced-cell entry and the use of chemical agents if necessary to place Jennings into restraints. Sergeant Peiffer (Peiffer), Lieutenant Horning (Horning), and five other correctional officers approached Jennings's cell. Peiffer instructed Jennings to back up to the cell door to be restrained. When Jennings refused, Peiffer gave Jennings a direct order to back up to the cell door or the application of chemical agents would be used. Jennings again refused, and Peiffer sprayed a short burst of chemical agents into Jennings's cell. When Peiffer again ordered Jennings to back up to the cell door, Jennings complied.

Horning placed Jennings in hard restraints, and Jennings was led to a shower stall. A nurse examined him for signs of distress and found none. Once in the shower stall, Peiffer ordered Jennings to remove his shoes. Rather than remove his shoes immediately, Jennings asked to see a restriction issued by the deputy warden justifying Peiffer's order. According to Jennings, Peiffer again ordered him to remove his shoes. Jennings asserts that after eventually removing one of his shoes, Peiffer began spraying him with chemical agents. It is the application of chemical agents while Jennings was in the shower stall that forms the gravamen of his excessive force claim.

On November 17, 2003, the district court adopted a magistrate judge's recommendation over Jennings's objection and granted Peiffer's and Horning's motion for summary judgment on Jennings's claim of excessive force. It is from this judgment that Jennings now appeals.

We review an award of summary judgment de novo. *Toms v. Taft,* 338 F.3d 519, 524 (6th Cir.2003). Summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a

---

* The Honorable James G. Carr, United States District Judge for the Northern District of Ohio, sitting by designation.

judgment as a matter of law." Fed. R.Civ.P. 56(c). The movants meet their initial burden by pointing to an absence of evidence regarding an essential element of the case. *Celotex v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the movants have met their burden of production, the non-movant cannot rest on his pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The mere existence of a scintilla of evidence will be insufficient; "there must be evidence on which the jury could reasonably find for the [non-movant]." 477 U.S. at 252; *see also Bell v. Ohio State Univ.*, 351 F.3d 240, 247 (6th Cir.2003).

A convicted prisoner's only avenue for pursuing an excessive force claim is through the Eighth Amendment's cruel and unusual punishment clause. *Combs v. Wilkinson*, 315 F.3d 548, 556 (6th Cir. 2002). When assessing a claim of excessive force, the core judicial inquiry is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 6–7, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992). "To determine such motivations on the part of correctional officers, courts should consider the reasons or motivation for the conduct, the type and extent of force applied, and the extent of inflicted injury." *Caldwell v. Moore*, 968 F.2d 595, 600 (6th Cir.1992).

Even when viewed in the light most favorable to Jennings, the facts indicate that as a matter of law, Peiffer and Horning used chemical agents on Jennings in a "good-faith effort to maintain or restore discipline." *Hudson*, 503 U.S. at 7. Although Jennings admits to questioning Peiffer's order directing him to hand over his shoes, Jennings argues that he had a right to question this order. " 'Inmates cannot be permitted to decide which orders they will obey, and when they will obey them. Someone must exercise authority and control.' " *Caldwell*, 968 F.2d at 601 (quoting *Soto v. Dickey*, 744 F.2d 1260, 1267 (7th Cir.1984)). Jennings ultimately may have attempted to obey the order by taking off one of his shoes, but Peiffer was not required to wait and see if Jennings would have a change of heart.

> "When an order is given to an inmate there are only so many choices available to the correctional officer. If it is an order that requires action by the institution, and the inmate cannot be persuaded to obey the order, some means must be used to compel compliance, such as a chemical agent or physical force. While experts who testified on behalf of the plaintiffs suggested that rather than seek to enforce orders, it was possible to leave the inmate alone if he chooses not to obey a particular order, and wait him out, experience and common sense establish that a prison cannot be operated in such a way."

*Id.* at 602 (quoting *Soto*, 744 F.2d at 1267). Peiffer's and Horning's conduct did not evince a wanton, malicious, or sadistic intent.

When Jennings questioned Peiffer's order in the shower stall, the act of defiance was not a singular occurrence, but a continuation of his ongoing obstreperous behavior beginning hours earlier. Jennings refused to comply with staff directives while breakfast was being served, covered his cell door window, was kicking his cell door, and was creating a disturbance in the housing unit. Before the incident in the shower stall, Peiffer was forced to apply chemical agents only a short while earlier because Jennings refused to follow a direct order to back up to his cell door to be

restrained. In this context, the officers did not act maliciously or sadistically in spraying a chemical agent to secure Jennings's compliance after he had questioned a direct order in the shower stall. *See Combs*, 315 F.3d at 557 (affirming summary judgment in favor of prison official and noting "that the use of mace to control a prison inmate is not malicious or sadistic" per se).

Jennings asserts that summary judgment was premature because he was not afforded sufficient discovery. He also argues that the district court improperly denied his motion for the appointment of counsel. We conclude that the district court did not abuse its discretion when ruling on these issues.

Accordingly, the district court's judgment is affirmed. Rule 34(j)(2)(C), Rules of the Sixth Circuit.