*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 08a0185p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

JULIE BRITTINGHAM and DAVID BRITTINGHAM,

　　　　　　　　　　　*Plaintiffs-Appellants,*

　　　　*v.*

GENERAL MOTORS CORPORATION and VIRGINIA
STULL,

　　　　　　　　　　　*Defendants-Appellees.*

No. 06-3114

>

---

Appeal from the United States District Court
for the Southern District of Ohio at Dayton.
No. 02-00283—Thomas M. Rose, District Judge.

Argued: January 30, 2008

Decided and Filed: May 16, 2008

Before: MERRITT, DAUGHTREY, and MOORE, Circuit Judges.

---

## COUNSEL

**ARGUED:** Thomas J. Intili, SKILKEN, LOWE & DANKOF, Dayton, Ohio, for Appellants. John M. Kunst, Jr., DINSMORE & SHOHL, Cincinnati, Ohio, for Appellees. **ON BRIEF:** Thomas J. Intili, SKILKEN, LOWE & DANKOF, Dayton, Ohio, P. Richard Meyer, MEYER & WILLIAMS, Jackson, Wyoming, for Appellants. John M. Kunst, Jr., Melissa L. Korfhage, DINSMORE & SHOHL, Cincinnati, Ohio, for Appellees.

---

## OPINION

---

　　　　MERRITT, Circuit Judge. The plaintiffs, Julie and David Brittingham, appeal the district court's denial of their motions to remand the case to state court and its grant of summary judgment in favor of both defendants, Dr. Virginia Stull ("Dr. Stull") and General Motors Corporation ("GM"). The plaintiffs' claims arose from a pre-employment physical examination conducted by one of GM's physicians, Dr. Stull. That examination produced two abnormal lung function tests, the results of which were never discussed with Ms. Brittingham. When she was later diagnosed with a lung disease, the plaintiffs sued GM, Dr. Stull, and several others for negligence, intentional misconduct, breach of fiduciary duty, and fraudulent concealment. The case was originally filed in state court, but was removed by the defendants to federal district court under 28 U.S.C. § 1441 on the basis of complete preemption. Because we find that the district court did not have subject matter

jurisdiction at the time of removal, we **VACATE** the district court's judgment and **REMAND** with instructions to remand the matter to the state court from which it came.

## I.    Factual and Procedural Background

Ms. Brittingham applied for employment at GM in July 1997. On August 1, 1997, she underwent a pre-employment physical examination that included a pulmonary function test. After the first test showed Ms. Brittingham's lung function to be 57% of predicted value, the test was repeated and again it showed diminished lung function, this time at 55% of predicted value. In her deposition, Ms. Brittingham testified that no one explained to her why the test had to be repeated. Joint Appendix ("JA") at V. III, p. 493-94. After reviewing two abnormal pulmonary function tests, Dr. Stull did not discuss the results and their significance with Ms. Brittingham. Instead, Dr. Stull had Ms. Brittingham sign a printout of the results and then approved her for employment in a GM plant. Subsequently, Ms. Brittingham worked full-time for GM from September 11, 1997, until August 11, 1999, when she became physically unable to continue working. In September 1999, Ms. Brittingham was diagnosed with Alpha-1 Antitrypsin Deficiency Syndrome ("AAD"), also known as "acquired emphysema." AAD is an inherited condition resulting from the liver's failure to produce a sufficient amount of the protein alpha-1 antritrypsin. To extend her shortening life expectancy, Ms. Brittingham, as of September 24, 2007, was awaiting a double lung transplant which carries a fifty percent, five-year death rate. Ms. Brittingham maintains that if Dr. Stull had informed her of the abnormal test results and referred her to a physician, she would have stopped smoking and sought immediate treatment.

On February 9, 2001, the Brittinghams filed a complaint against GM, Dr. Stull, and others in Ohio state court. J.A. at Vol. II, p.197. The defendants removed the case to federal court on the grounds that some of the claims were subject to complete preemption under section 301 of the Labor Management Relations Act (LMRA). They argued that the state law tort claims were actually based on alleged breaches of the collective bargaining agreement ("CBA") that Ms. Brittingham was subject to during the course of her employment. The plaintiffs moved to remand arguing that the complaint (1) only stated state law claims, (2) did not rely on any provision in the CBA, and (3) did not contain a federal claim. J.A. at Vol. I, p. 70. The district court disagreed, reasoning that it had subject matter jurisdiction over at least one of the plaintiffs' claims – the allegation that Ms. Brittingham was coerced to return to work – because it fell within the scope of the CBA and was necessarily preempted. *Id.* at 74. The court noted that the CBA specifically addressed sick leave and returning to work and that there was no basis in state tort law for a claim based on being coerced to return to work. *Id.* After denying the motion to remand, the district court granted the plaintiffs' motion to file an amended complaint – one that would be limited to state law claims – recognizing that the plaintiffs' express purpose was to eliminate any claim which would be subject to preemption. *Id.* at 76-77.

The plaintiffs' first amended complaint, in addition to other changes, omitted the previous allegations that GM (1) placed Ms. Brittingham in an environmentally hazardous work environment and (2) coerced her to return to work when she was ill. *Id.* at 130 - 46. Those two claims were dismissed with prejudice. *Id.* at 77. The district court then reached the issue of whether it had original jurisdiction over any of the remaining claims in the amended complaint – essentially asking whether there were any remaining claims that were preempted by the LMRA. The defendants argued that several of the plaintiffs' claims were preempted – all of which were omitted in the amended complaint except one – "that GM and Delphi failed to disclose the results of her physical examination both before and after her employment." *Id.* at 77-78. The defendants contended that the claim would require reference to a provision in the CBA that provides: "A report of physical examination and any laboratory test made by physicians acting for the Corporation will be given [sic] the personal physician of the individual employee involved upon the written request of the employee." *Id.* at 78, 168 ¶ 105. The district court found that Ms. Brittingham was not subject to

the CBA at the time of the examination (pre-employment) and consequently was not subject to any particular procedure for receiving results – a finding reinforced by the complaint's language limiting the claim to the time period "before and after" employment. Since the plaintiffs' claims would not require interpretation of the CBA and were rooted in state law, none of the remaining claims were preempted. *Id.* at 80. Finding it no longer had original jurisdiction, the district court then declined to exercise supplemental jurisdiction over the plaintiffs' state law claims, some of which might raise "potentially complicated issues of state law." *Id.* at 81. The case was remanded to state court.

Upon returning to state court, the plaintiffs again amended their complaint and again it was removed to federal court by the defendants. The significant difference between the first amended complaint – in which the district court found that none of the claims were preempted – and the amended complaint filed in state court was that the former limited the negligence claim to the time "before and after" employment while the latter did not. *Compare* Pl. 1st Am. Compl. (federal court), J.A. at V. I, p. 138 ("They failed to disclose to plaintiff Julie Brittingham the results . . . both before and after her employment . . . ), *with* Pl. 1st Am. Compl. (state court), J.A. at V. I, p. 91 ("Said Defendants failed to disclose to Plaintiff Julie Brittingham the results of her pre-employment physical examination and testing with General Motors"). The plaintiffs filed a motion to remand arguing that none of the claims were preempted. The district court concluded that the complaint, "taken on its face, presents factual allegations of actions that allegedly occurred while Brittingham was employed at GM or Delphi" and since "those actions may have taken place during the time when Brittingham was governed by the CBA," adjudication of the claims may require interpretation of the CBA. J.A. at VII, p. 308. Consequently, the district court denied the plaintiffs' motion to remand.

In April 2003, the district court granted the plaintiffs' motion to file a second amended complaint. In the second amended complaint, the plaintiffs limited each of the claims discussed above to the time period "before and after employment." The district court, dismissing numerous arguments by the defendants that some of the claims were still preempted, concluded that the plaintiffs' second amended complaint was not subject to preemption. However, instead of remanding the case back to state court, the court exercised supplemental jurisdiction over the state law claims. The court attributed the volleying of the case between federal and state court to the plaintiffs' tactics which it found were "clearly 'manipulative," regardless of whether they were intentional. *Id.* at 403. The court noted that significant litigation in the case had already taken place and it found that the principles of judicial economy and fairness outweighed the principle of comity in the instant case. *Id.* at 403-04.

In November 2003, the district court granted Dr. Stull's motion for summary judgment after it found that the plaintiffs' complaint was for medical malpractice, which is subject to a one-year statute of limitations that the plaintiffs had not met. *Id.* at 546. In June 2004, the district court granted GM's motion for summary judgment because it found that, under Ohio law, a potential employer does not have a duty to disclose an applicant's medical condition to her and refer her to a qualified physician. J.A. at V. IX, p.1343. Without a duty, the plaintiffs' other claims, including intentional misconduct, breach of fiduciary duty, fraudulent concealment, and loss of consortium were dismissed. *Id.*

## II.    Analysis[1]

We review a district court's decision regarding subject matter jurisdiction de novo.  *Long v. Bando Mfg. of Am., Inc.*, 201 F.3d 754, 759 (6th Cir. 2000).  "In order to invoke the district court's removal jurisdiction, a defendant must show that the district court has original jurisdiction over the action."  *Id.*  at 757.  Further, "[t]he burden of showing that the district court has original jurisdiction is on the party seeking removal."  *Id.*

When the defendants removed the case to federal court for the second time, the district court declined to remand it to state court.  The court reasoned that it had subject matter jurisdiction because "at least two" of the plaintiffs' claims were preempted because they implicated facts that may have occurred while Ms. Brittingham was an employee and governed by the CBA.  On review, we find that none of the claims in the plaintiffs' amended complaint in state court were preempted because none of them required an interpretation of the CBA; rather, each claim was based solely on state law rights.

Section 301 of the Labor Management Relations Act provides:

Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a).  Causes of action within the scope of section 301 are removable to federal court under the doctrine of complete preemption.  *Caterpillar Inc. v. Williams*, 482 U.S. 386, 394 (1987).  "Questions relating to what the parties to a labor agreement agreed, and what legal consequences were intended to flow from breaches of that agreement, must be resolved by reference to uniform federal law, whether such questions arise in the context of a suit for breach of contract or in a suit alleging liability in tort."  *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 211 (1985).  In *Lingle v. Norge Division of Magic Chef, Inc.*, 486 U.S. 399, 404 (1988), the Supreme Court emphasized that the policy underlying the preemption doctrine is to "ensure uniform interpretation of collective-bargaining agreements . . . to promote the peaceable, consistent resolution of labor-management disputes."  These policies are not implicated in every labor law case.  As the Court has stated, "not every dispute concerning employment, or tangentially involving a provision of a collective-bargaining agreement, is pre-empted by § 301 or other provisions of the federal labor law."  *Allis-Chalmers Corp.*, 471 U.S. at 211.  It is only "when resolution of a state-law claim is *substantially* dependent upon analysis of the terms of an agreement made between the parties in a labor contract,

---

[1]Before reaching the merits, we must address the defendants' argument that the plaintiffs are precluded from appealing the district court's orders denying their motions to remand because the plaintiffs did not list these orders in their notice of appeal.  In *Caldwell v. Moore*, 968 F.2d 595, 598 (6th Cir. 1992), the plaintiff's notice of appeal listed the district court's order granting the defendants' motion for summary judgment, but failed to list an earlier order denying the plaintiff leave to amend his complaint.  In that case, we rejected the defendants' argument that the court could not consider whether the district court erroneously denied the plaintiff's leave to amend.  Central to our holding was the fact that the "denial of a request for leave to file amended complaint is not appealable;" rather, "such an order is appealable after the entry of a final judgment because the final judgment calls into question the propriety of all the nonfinal rulings of the district court."  *Id.*  Since the plaintiff could not have appealed the district court's order until after the entry of summary judgment and the defendants failed to identify any "prejudice as a result of this omission," we found that the "notice of appeal was adequate to put the opposing parties on notice of the issues [the plaintiff] was appealing."  *Id.*

We find the present facts indistinguishable from *Caldwell*.  The district court's order denying the plaintiffs' motion to remand was not final and appealable.  *See Chicago, Rock Island & Pac. R.R. Co. v. Stude*, 346 U.S. 574, 577 (1954).  While the plaintiffs did not list all of the orders preceding final judgment, they did list the orders granting summary judgment in favor of the defendants.  Further, the plaintiffs' brief was sufficient to put the defendants on notice that the plaintiffs were appealing the district court's order denying the plaintiffs' motion to remand the case to state court.  The defendants have not shown any prejudice as a result of the plaintiffs' omission.

that [the] claim must either be treated as a § 301 claim . . . or dismissed as pre-empted by federal labor-contract law." *Id.* at 220 (emphasis added). "[I]t would be inconsistent with congressional intent under [section 301] to pre-empt state rules that proscribe conduct, or establish rights and obligations, independent of a labor contract." *Id.* at 212.

In *Lingle*, the Supreme Court delineated the guiding principle for courts to use when discerning whether the state law claim is preempted:

> [I]f the resolution of a state-law claim depends upon the meaning of a collective-bargaining agreement, the application of state law (which might lead to inconsistent results since there could be as many state-law principles as there are States) is pre-empted and federal labor-law principles — necessarily uniform throughout the Nation — must be employed to resolve the dispute.

486 U.S. at 405-06. Further, in *Caterpillar*, the Supreme Court clarified that "[s]ection 301 governs claims founded directly on rights created by collective-bargaining agreements, and also claims 'substantially dependent on analysis of a collective-bargaining agreement.'" 482 U.S. at 394 (citing *Electrical Workers v. Hechler*, 481 U.S. 851, 859 n.3 (1987)). Based on the Supreme Court's directives, this Circuit developed a two-step approach for determining whether a state law claim is preempted by section 301. "First, the district court must examine whether proof of the state law claim requires interpretation of collective bargaining agreement terms." *DeCoe v. General Motors Corp.*, 32 F.3d 212, 216 (6th Cir. 1994). The question informing the first step's analysis is whether the plaintiff can prove all the elements of her claim without contract interpretation. *Id.* Looking to the essence of a plaintiff's claim, a court must "determine whether the plaintiff is attempting to disguise what is essentially a contract claim as a tort." *Id.* The second step requires a court to "ascertain whether the right claimed by the plaintiff is created by the collective bargaining agreement or by state law." *Id.*

The plaintiffs' claim for negligence and intentional misconduct was based upon two factual allegations: (1) that "[s]aid Defendants failed to disclose to Plaintiff Julie Brittingham the results of her pre-employment physical examination and testing with General Motors;" and (2) that "[s]aid Defendants failed to disclose to Plaintiff Julie Brittingham facts about her medical condition that said Defendants knew, but of which Julie Brittingham was unaware." J.A. at V. II, p. 291. To determine whether the claim is preempted, we inquire whether proving this claim would require the interpretation of any provision in the CBA. We must also "ascertain whether the right claimed by the plaintiff is created by the collective bargaining agreement or by state law." *DeCoe*, 32 F.3d at 216. To succeed on a negligence claim under Ohio law, a plaintiff must establish the existence of a duty, a breach of that duty, and causation of an injury. *See Menifee, Adm'x v. Ohio Welding Prods., Inc.* 472 N.E.2d 707, 710 (Ohio 1984). There are three CBA provisions that the defendants argue would be relevant to a court's inquiry. First, there is a provision that reads "[w]hen physicals are conducted on Area Hire or Extended Area Hire Applicants, the criteria used is the same as that used for a Fit for Duty Exam when an employee of that plant is undergoing a reinstatement to return to work from sick leave." J.A. at V. I, p. 169. The second provision requires the employer to provide physical exams to employees who are exposed to certain substances and provides that each employee may request a written report of the results of such examinations "which are related to occupational exposure." J.A. at V. I, p. 171. These provisions are easily dismissed as inapplicable to Ms. Brittingham's factual situation. The first is irrelevant because Ms. Brittingham was not an Area Hire or Extended Area Hire Applicant. The second provision only governs examinations taken while the individual is an employee and its procedure for the report of such results is limited to tests "related to occupational exposure;" it would not cover pre-employment physical examinations.

The third provision presents the more difficult question. It reads: "A report of physical examination and any laboratory test made by physicians acting for the Corporation will be given [sic]

the personal physician of the individual employee involved upon the request of the employee." J.A. at V. I, p. 168, ¶ 105. On its face, the provision only governs employees and would not apply or govern the disclosure of results either before or after Ms. Brittingham's employment with GM. We agree with the district court that if the claim is limited to the time "before and after employment," it is clearly not preempted. J.A. at V. I, p. 80. What makes the issue more complicated is that the plaintiffs' amended complaint in state court did not limit the time period to "before and after employment." Consequently, the defendants argue that any alleged duty to disclose that arose during the course of Ms. Brittingham's employment would require an interpretation of the CBA's provision covering the disclosure of test results to an employee. We find this argument unpersuasive.

First, the CBA provision is best interpreted as governing individuals who were employees at the time of the examination. The provision twice refers to an "employee," as opposed to job applicants. That Ms. Brittingham later became an employee does not alter our view that the provision appears to apply solely to those individuals who were employees when the exam took place. This reasoning comports with the district court's interpretation of the provision when it was deciding whether the plaintiffs' second amended complaint was preempted. Although the second amended complaint was limited to the time "before and after employment," the district court's analysis is accurate and instructive: "the section cited presumably applies to employees who are members of the collective bargaining unit and does not refer to physical examinations made prior to when Brittingham was employed and was not a member of the collective bargaining unit." J.A. at V. III, p. 400. Second, the provision makes little sense when applied to Ms. Brittingham's case. The plaintiffs' argument is based on the defendants' failure to comply with its duty to act to disclose the important medical information, not its failure to turn over requested information. Even if the provision mandated that GM turn over the results of physical examinations taken while the employee was a job applicant, that situation is clearly distinct from one where the applicant or employee is wholly unaware that there is anything abnormal within the results such that she would want a copy of them. The provision is triggered, based on its own language, "upon the request of the employee." Here, there was no reason for Ms. Brittingham to request the information – in fact, her entire argument is premised on the fact that she did not request the files or seek medical treatment because she was not told that her pulmonary tests were abnormal. We decline to construe the negligence claim as relying on a CBA provision that requires the plaintiff-employee to act first when the basis of the claim is the defendants' failure to act.

Further, the plaintiffs' negligence claim is based on an alleged duty under Ohio law to disclose test results to job applicants.[2] The plaintiffs do not rely on the CBA to create the right to have results disclosed to them. The fact that the issue has not been squarely addressed by Ohio courts does not uniformly prohibit plaintiffs from asserting complaints based on this right in state court. We find no CBA provision that would create a duty on employers to disclose to applicants the results of pre-employment physical examinations. If this right and attendant duty to disclose exist, they arise solely under state law. The defendants have not pointed, either in their briefs or at oral argument, to any other CBA provisions which would require a court's interpretation or would create the right the plaintiffs now want to exercise. Consequently, we find that the plaintiffs could prove all the elements of the negligence and intentional misconduct claim without reference to any provision in the CBA.

Our conclusion is supported by the case law. In *International Brotherhood of Electrical Workers v. Hechler*, 481 U.S. 851 (1987), the Supreme Court held that an employee's state law tort suit against her union for breach of the union's duty to provide a safe workplace was preempted because the duty arose from the collective bargaining agreement. The CBA contained provisions on

---

[2]This theory of liability falls under the general negligence theory based on an affirmative duty to act. *See* RESTATEMENT (SECOND) OF TORTS § 314, 314(A), 314(B), 322-25 (1979) (describing the general rule regarding one's duty to act and explaining what special relationships create a duty to act). The plaintiffs' theory has been embraced by the Ohio courts, albeit on different facts. *See Meinze v. Holmes*, 532 N.E.2d 170 (Ohio Ct. App. 1987).

safety and working requirements for electrical apprentices. The Court found that the plaintiff would have to use these provisions to argue that the Union had assumed an implied duty of care. *Id.* at 861-62. This would require a court to ascertain whether the agreement in fact created an implied duty and the nature and scope of that duty. *Id.* Consequently, the claim was preempted because it involved questions of contract interpretation. In *United Steelworkers of America v. Rawson*, 495 U.S. 362 (1987), the Supreme Court again addressed the duty element. In *Rawson*, survivors of miners who were killed in a mining fire sued the labor union for the negligent inspection of the mine. The Idaho Supreme Court held that the plaintiffs' claims were not preempted. It reasoned that the union was liable under state tort law because its duty to perform the inspection reasonably arose from the inspection itself, rather than from the collective bargaining agreement provision that required the union's participation in mine inspections. *Id.* at 370-71. The Supreme Court disagreed, finding that the "tort claim cannot be described as independent of the collective-bargaining agreement." *Id.* at 371. Significantly, the Court found that "[t]his is not a situation where the Union's delegates are accused of acting in a way that might violate the duty of reasonable care owed to every person in society." *Id.* Rather, because the duty "[arose] out of the collective-bargaining agreement . . . .the enforcement of that agreement and the remedies for its breach are matters governed by federal law." *Id.* at 371.

In the present case, the CBA did not impose a duty on GM to conduct pre-employment physical examinations. If it did, there would be no distinction between this case and *Rawson.* The plaintiffs would essentially be arguing that GM had a derivative duty to disclose the results arising from its agreement-imposed duty to conduct the tests. Instead, the plaintiffs' argument is that Ohio law imposes a duty on potential employers to disclose the results of a pre-employment physical examination. That issue is not free from doubt, but whether a duty exists under Ohio law does not change the basic fact that the CBA does not require GM to conduct the pre-employment examinations and it says nothing about the disclosure of results from them. The sole provision put forth by the defendants relates to the disclosure of results to an employee upon request. This has no bearing on whether a potential employee has a right to receive negative results of which she was wholly unaware. Based upon the above analysis, we hold that the plaintiffs' negligence claim is not preempted.

In addition to the negligence and intentional misconduct claim, the plaintiffs' amended state court complaint contained claims alleging the following: (1) breach of fiduciary duty by GM and Delphi, (2) fraudulent concealment, (3) medical negligence, and (4) loss of consortium by Mr. Brittingham. The district court referred to both the breach of fiduciary duty claim and the medical negligence claim when it determined that "at least two" of the plaintiffs' claims were preempted. The court reasoned that the claims were preempted because they "present[] factual allegations of actions that allegedly occurred while Brittingham was employed at GM and Delphi. Further, those actions may have taken place during the time when Brittingham was governed by the CBA. Therefore, adjudication of the claims that arise from those actions may require interpretation of the CBA." J.A. at V. II, p. 308. We are unpersuaded by the argument that because the claims may implicate the time period during which Ms. Brittingham was employed, they are necessarily preempted. If that were the case, then every time an employee who was governed by a CBA sued her employer, the claims would be preempted. This is an illogical result and one that has been rejected by the Supreme Court. In *Lingle*, the Supreme Court addressed "whether an employee covered by a collective-bargaining agreement that provides her with a contractual remedy for discharge . . . may enforce her state-law remedy for retaliatory discharge." 486 U.S. at 401. The Court held that the state tort remedy was not preempted. In reaching its conclusion, the Court set forth the elements of a retaliatory discharge claim. *Id.* at 407. While the Court acknowledged that the plaintiff would have to address "purely factual questions [pertaining] to the conduct of the employee and the motivation of the employer," it stressed that "[n]either of the elements requires a court to interpret any term of a collective-bargaining agreement." *Id.* For these reasons, the state law remedy was "independent" of the CBA meaning "resolution of the state-law claim does not require construing the collective-bargaining

agreement." *Id.* Similarly, the Brittinghams' state law claims are not preempted unless they require a court to interpret a provision in the CBA, although the claims may rely on factual questions pertaining to conduct that occurred while Ms. Brittingham was an employee. The only CBA provision arguably on point sets forth a "comprehensive process for handling employee grievances." Defendants-Appellees Brief, p. 19. Yet the grievance procedure specifically states that it is addressing "[grievances] in connection with [employees'] work." J.A. at V. I, p. 157. This provision is inapplicable because Ms. Brittingham does not have a grievance in connection with her "work" at the GM plant. The defendants fail to point to any CBA provisions that govern an employee's breach of fiduciary duty claims or medical negligence claims.

Resolving the plaintiffs' state law claims will not "substantially" depend upon analysis of any provision in the CBA because there is only one CBA provision that has, at best, a tangential relationship to the state law claims. *See Allis-Chalmers Corp.*, 471 U.S. at 211, 220. Since all of the plaintiffs' claims are rooted in state law and do not require a court to interpret the CBA, we hold that none of the claims in the plaintiffs' amended complaint in state court were preempted. Accordingly, the district court did not have subject matter jurisdiction when the case was removed to federal court for the second time.

### III.    Conclusion

For the foregoing reasons, we **VACATE** the district court's judgment and **REMAND** with instructions to remand the matter to the state court.